617 So.2d 51 (1993)
Marsha B. HIGBEE, et al.
v.
USAA CASUALTY INSURANCE COMPANY.
No. 92-CA-1920.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 1993.
Writ Denied June 4, 1993.
*52 Marsha B. Higbee, New Orleans, in pro. per. and for plaintiffs/appellants.
John T. Suttles, Jr., Schafer & Schafer, New Orleans, for defendant/appellee.
Before BYRNES, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
Plaintiffs, children of decedent John J. Healy, Jr., appeal a trial court judgment granting a motion for summary judgment in favor of defendant, USAA Casualty Insurance Company. The trial court held that the uninsured motorist (UM) provision of Healy's did not cover injury and death occurring while the insured was in Spain. We affirm.

FACTS:
Healy, who was domiciled in New Orleans, Louisiana, was insured by USAA Casualty Insurance Company. He was driving a rental car in Simancas, Valladolid, Spain on January 13, 1989 when he allegedly swerved to avoid an unidentified vehicle which entered his lane while passing another car. He collided with the trailer of a tractor-trailer rig and sustained critical injuries. He later died in Spain.
Healy's children, Marsha B. Higbee as tutrix of her minor child Gareth John Healy, and Bronwyn Healy Westling, brought suit against USAA seeking recovery under the UM provisions of Healy's automobile insurance. USAA filed a motion for summary judgment based on the general provisions of the insurance policy, which limited the geographic boundaries of the coverage. The trial court granted the motion for summary judgment, holding that the terms of the policy denied coverage for injury and death occurring in Spain. Plaintiffs appeal, claiming that the motion for summary judgment was improperly granted, first, because the language of the policy and its structure were ambiguous, and second, because the public policy underlying UM coverage prohibits geographic limitations on such coverage.

Standard for granting motion for summary judgment
Summary judgment may be rendered only where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B).
When reviewing a trial court decision granting a motion for summary judgment, the appellate court must consider the evidence de novo and review the evidence using the same criteria applied by the trial courts to determine whether the grant of summary judgment was appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991).

*53 Ambiguity of the Policy

Plaintiffs claim that the trial court erred in dismissing their suit by granting defendant's motion for summary judgment because a genuine issue of material fact exists which would defeat the motion for summary judgment under La.C.C.P. art. 966(B). Plaintiff asserts that the structure of the policy and the arrangement of language creates an ambiguity which must be weighed by the trier of fact.
The pertinent language of the policy is found in Part F of the insurance contract, labeled "General Provisions." Under the subheading entitled "Policy Period and Territory" the contract provides as follows:
"This policy applies only to accidents and losses which occur:
1. During the policy period as shown in the Declarations; and
2. Within the policy territory. The policy territory is:

1. The United States of America, its territories or possessions;
2. Puerto Rico; or
3. Canada."
(Emphasis added.) Under the express language of the policy at issue, the deceased in the instant case obviously was not within the policy territory at the time of the accident and should therefore be denied coverage under the terms of the provision.
However, plaintiffs claim that the policy language is ambiguous because Section C, which deals specifically with UM coverage, contains no geographic restrictions. They argue that the single reference to policy territory in Section F of the policy should not limit the UM coverage.
It is well established that ambiguity in the language of an insurance contract creates a genuine issue of material fact which should be construed against the insurer. Jefferson v. Monumental General Insurance Co., 577 So.2d 1184 (La. App.2d Cir.1991). However, where the language of the policy is clear and free of ambiguity, it constitutes the contract between the parties and must be enforced as written. Fruge v. First Continental Life & Accident Insurance Co., 430 So.2d 1072 (La.App. 4th Cir.), writ denied 438 So.2d 573 (La.1983).
In this case, no ambiguity exists regarding the language of the contract. The policy clearly sets forth the territorial restrictions that apply to the policy as a whole, including the UM provisions. Under the provisions of La.C.C. art 2046, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent."
Thus, the trial court properly held that under the terms of the policy, the territorial restrictions exclude coverage under the UM provisions for the decedent's accident which occurred in Spain. The insurance policy must be viewed as a whole and a policy provision must be read in light of the other pertinent provisions. Cannon v. Allstate Insurance Co., 595 So.2d 745 (La.App. 4th Cir.), writ denied 598 So.2d 359 (La.1992). Clearly, the provisions contained under the heading "General Provisions," which follow the specific provisions in the paragraphs that precede it, apply to the entire policy, including the UM provisions.
Plaintiffs also assert that USAA advertisements to military personnel have lulled its policy holders into believing themselves covered by their UM coverage all over the world, because travel is a prominent part of military service. In reviewing the advertisement to which plaintiffs refer, we can find no language which refers in any way to geographical restrictions which might or might not apply to any policy issued. Thus, we reject plaintiffs' argument that the advertisements create a question of fact as to coverage so as to defeat the motion for summary judgment.

Public Policy Considerations
Next, plaintiffs assert that the public policy underlying UM coverage dictates that the insured party be able to recover under his UM coverage without geographic restrictions as to the site of the injury.
The trial judge declined to rule on whether a geographic limitation concerning UM coverage violates public policy. In the reasons *54 for judgment, the trial judge stated as follows:
The court is of the opinion that this Summary Judgment should be granted. It feels this question should be addressed by the Appellate Court and Supreme Court.
After thoroughly discussing the matter with both counsel during argument here, it all depends on whether or not the wordage in Howell versus Balboa Insurance Company cited at 564 So.2d 298 mandates a ruling that it is contra to public policy for this insurance policy to be limited to those areas which it is limited to.
This Court feels that the Howell case is not clear enough for this Court to interpret thusly. It addresses itself to the Appellate and Supreme Court to see if the Supreme Court wants to broaden the concept as annunciated in Howell to say that the territorial limitation of this policy is not applicable to uninsured motorist because it would be contra to the public policy concept embodied in the uninsured motorist law.
Plaintiffs assert that the public policy underlying UM coverage in Louisiana, as discussed in Howell and in preceding cases, prohibits the restriction of UM coverage in any manner, including geographically.
LSA-R.S. 22:1406(D) requires insurance companies to include UM coverage in all liability policies issued by an insurer licensed in Louisiana covering any motor vehicle used in the state, unless specifically waived by the insured. It provides in part:
§ 1406 Specific duties of casualty and surety division; uninsured motorist coverage; temporary vehicles and rental vehicles
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
Plaintiffs rely on Howell v. Balboa Insurance Co., 564 So.2d 298 (La.1990) and Elledge v. Warren, 263 So.2d 912 (La.App. 3rd Cir.), writ ref'd 262 La. 1096, 266 So.2d 223 (1972) to argue that the public policy underlying R.S. 22:1406 prohibits geographic restrictions on the UM coverage in Healy's policy.
In Elledge, the third circuit held that a provision excluding UM coverage when the insured is occupying an uninsured vehicle owned by the named insured or a relative was void, since UM coverage attaches to the insured, not to a particular automobile. Elledge sets forth the early history of the legislation which adopted a mandatory offer of UM coverage in liability policies in the state of Louisiana. The court stated:
There existed in our society a situation whereby financially irresponsible people could acquire and drive vehicles capable of great damage. Because of their financial irresponsibility and lack of insurance, they were unable to respond to their victim in damages under LSA-C.C. Art. 2315. This created a class of injured people in our state who were left *55 without recourse and who, without some form of relief, might become wards of the state.
. . . . .
In surveying the problem, it became evident to our legislature that the source of the harm was a danger peculiar to the use of the automobile and the industry most capable and most interested in resolving the problem was the one most closely related thereto in terms of economics and self interestthe automobile insurers. Therefore, our legislature seized upon the solution set forth by the insurance industry and made the offering of uninsured motorist protection a mandatory condition precedent before the companies could conduct business in Louisiana.
263 So.2d at 917. Quoting Booth v. Fireman's Fund Insurance Co., 253 La. 521, 218 So.2d 580 (1968), the court stated that the intent of the UM statute and the policy endorsement "is to afford protection to the insured when they become the innocent victims of the negligence of uninsured motorists." Id.
In Howell, the supreme court expressly held that UM coverage attaches to the person of the insured, not to the vehicle, and that any provision of UM coverage which purports to limit insured status to those instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406. "In other words, any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist." Id., 564 So.2d at 301-302.
This is the language to which plaintiff points, and to which the trial court seemingly referred in its reasons for judgment, for the argument that the purpose of the UM coverage is to protect the insured without restrictions as to territory. We disagree with this argument because we do not believe that the general provision in the insurance policy at issue, which puts territorial restrictions on coverage under the entire policy, is violative of the public policy enunciated by LSA-R.S. 22:1406 as interpreted by the courts in Elledge and Howell.
The Third Circuit was presented with the issue we face in the instant case concerning an identically-worded provision in an automobile liability insurance policy in Brillo v. Hesse, 560 So.2d 84 (La.App. 3rd Cir.1990), writ denied 564 So.2d 329 (La.1990), which was decided just prior to Howell. The Court held that such a geographic restriction was not invalid as against public policy as enunciated in the UM statute. The court found that the object of the UM statute is "to promote recovery of adequate damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance." Id. at 86-87, quoting Block v. Reliance Insurance Co., 433 So.2d 1040 (La.1983).
The Brillo court allowed that requiring UM coverage without geographic restriction would further the UM statute's objective, but that such a requirement would place "an insurmountable burden" on the insurance industry to defend claims that could arise anywhere in the world.
The court also pointed out that Louisiana's financial responsibility law, LSA-R.S. 32:900, requires liability coverage only for those accidents which occur within the United States and Canada.
The Third Circuit holding in Brillo is supported by the United States Fifth Circuit decision in Curtis v. Allstate Insurance Co., 631 F.2d 79 (5th Cir.1980). There, the court upheld a district court finding that a similar provision to the one in the instant case was not invalid as against the public policy contained in the Louisiana UM statute.[1] The district court in Curtis, 473 F.Supp. 315 (E.D.La.1979) *56 stated that no case had been brought to its attention which held that a general condition applicable to an entire insurance policy, and not just to UM coverage, is against the public policy of Louisiana.
The court reasoned that since the UM statute requires coverage in "not less than the limits of bodily injury liability provided by the policy" it would be "stretching that statute to the breaking point to hold that liability coverage can be limited geographically, but not UM coverage." Id. at 317. The court then found that the geographic limitation served a rational business purpose since it serves to exclude countries from the policy territory where the number of uninsured motorists is unknown or is so great as to make coverage impractical.
We find the reasoning set forth in Brillo and in Curtis to be persuasive. We do not believe that the legislature intended in drafting LSA-R.S. 22:1406 to prohibit all general policy restrictions from being applied to uninsured motorist coverage. There are certain reasonable restrictions that do not violate the public policy behind the mandatory UM coverage. The territorial restriction at issue in this case is such a provision. Certainly, to allow no geographic limitations on UM coverage would further the public policy behind the statute of allowing the insured to recover for injuries caused by uninsured motorists. However, to allow such a limitation does not defeat the public policy underlying the UM statute. Such a restriction is reasonable when the burden on insurance providers is weighed against the benefits of disallowing the restriction.
Additionally, a number of reasons exist for allowing geographic restrictions on insurance policies in general. Other countries have different judicial systems, fundamentally different tort reform systems, different traffic laws, different substantive rules of procedure and evidence, and different methods for collecting damages. Insurance policies issued in this country are designed to cover accidents which occur in Anglo-American countries where English is the predominant language. The rates charged for the insurance coverage are based on an easily-understood, relatively uniform system of laws. Insurers should not be required to assume risks of loss for legal systems with substantial differences, such as the foreign civil law of Spain. Thus, insurers may reasonable limit insurance coverage to accidents occurring within a reasonable geographic area.
Finally, we can see no reason to allow geographic restrictions on liability coverage, which requires the insured party to compensate a victim of his negligence, and to disallow limits on UM coverage where the insured is compensated for the negligence of an uninsured driver.
For the foregoing reasons, we hold that the general provision in the insurance policy at issue here which limits coverage of the policy to the United States and its territories, Canada, and Puerto Rico is not violative of the public policy underlying R.S. 22:1406.

CONCLUSION
We find that no genuine issues of material fact exist. The judgment granting the defendant's motion for summary judgment is therefore affirmed.
JONES, J., concurs.
JONES, Judge, concurring:
I concur with the results in this matter. However, I am concerned that the language used by the Louisiana Supreme Court in Howell v. Balboa Ins. Co., 564 So.2d 298, 301 (La.1990) suggests that a public policy objective of the UM statute is to protect the insured at all times against the risk of damages at the hands of uninsured motorists. Specifically, I quote,
We expressly hold that UM coverage attaches to the person of the insured, not the vehicle, and that any provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D). In other words, any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having *57 sustained injury by an uninsured/underinsured motorist.
I join the trial court in seeking direction from the Supreme Court to clarify the meaning of this language.
NOTES
[1] The Fifth Circuit certified the question of whether Louisiana allows territorial restrictions in automobile insurance policies to the Supreme Court of Louisiana. The court entered an order declining to answer the certified question.