1997–NMCA–065

942 P.2d 191

Candelario DOMINGUEZ,
Plaintiff–Appellant,

v.

DAIRYLAND INSURANCE COMPANY,
a Wisconsin corporation,
Defendant–Appellee.

No. 17574.

Court of Appeals of New Mexico.

June 10, 1997.

Certiorari Denied July 24, 1997.

Alexander A. Wold, Jr., Alexander A. Wold, Jr., P.C., Albuquerque, for Plaintiff–Appellant.

Terri L. Sauer Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for Defendant–Appellee.

## OPINION

DONNELLY, Judge.

1. Plaintiff appeals from an order granting summary judgment and dismissing his declaratory judgment action against Defendant Dairyland Insurance Company (Dairyland). Two issues are raised on appeal: (1) whether the district court erred in upholding the validity of the territorial limitation clause contained in Dairyland's motor vehicle insurance policy; and (2) whether the district court erred in denying Plaintiff's motion to amend his complaint. For the reasons discussed herein, we affirm.

### FACTS AND PROCEDURAL POSTURE

2. Plaintiff, a resident of Bernalillo County, New Mexico, sustained bodily injuries in 1993 when the automobile he was driving in Ciudad Juarez, Mexico, was struck by an uninsured motorist. It is undisputed that the accident was caused by the negligence of the uninsured driver and that Plaintiff was the named insured in an automobile insurance policy issued by Dairyland. It is also undisputed that Dairyland's policy was in effect at the time of the accident and that it

provided uninsured motorist coverage. The policy, however, contained a provision expressly restricting Dairyland's obligation to provide insurance coverage for any losses which occur outside of certain specified territorial limits. Under the heading, "GENERAL POLICY PROVISIONS," the policy stated: "**Territory** This policy applies only to car accidents and losses within the United States of America, its territories or possessions and Canada, or while the car is being transported between their ports." (Emphasis omitted.)

3. Plaintiff made a claim for damages sustained by him as a result of the accident. Dairyland denied the claim, relying on the territorial limitation contained in its policy. Thereafter, Plaintiff filed a complaint for declaratory judgment on August 17, 1994, and the parties filed opposing motions for summary judgment. Following a hearing, the district court heard the arguments of counsel and granted Dairyland's cross-motion for summary judgment on March 18, 1996. Before a written order was entered, Plaintiff moved to amend his complaint to add a claim alleging that Dairyland's licensed agent had misrepresented the policy's coverage. Plaintiff's motion to amend was filed on March 21, 1996. The district court verbally denied Plaintiff's motion to amend the complaint and entered an order granting summary judgment in favor of Dairyland. Plaintiff subsequently filed this appeal.

*VALIDITY OF THE TERRITORIAL EXCLUSION*

■ 4. Plaintiff argues that the territorial limitation contained in Dairyland's insurance policy violates NMSA 1978, Section 66–5–301 (Repl.Pamp.1994), the provision for uninsured motorist coverage for motor vehicle or automobile liability policies delivered or issued for delivery in New Mexico. Both parties acknowledge that the language of Section 66–5–301 is silent on the question of whether an uninsured motorist provision contained in a motor vehicle insurance policy may impose territorial limitations. Plaintiff argues that this statutory silence indicates a legislative intent to disallow territorial limitations upon uninsured motorist coverage. Because the issue before us turns primarily on legislative intent, we review the issues involving statutory interpretation de novo as a matter of law. *See Romero Excavation & Trucking, Inc. v. Bradley Constr., Inc.*, 121 N.M. 471, 473, 913 P.2d 659, 661 (1996); *Madrid v. University of Cal.*, 105 N.M. 715, 718, 737 P.2d 74, 77 (1987).

5. The precise issue argued here is one of first impression in New Mexico. Other jurisdictions have considered the validity of territorial restrictions contained in motor vehicle insurance policies and uninsured motorist provisions. Relying on different rationales, these jurisdictions have overwhelmingly rejected claims that motor vehicle policy provisions imposing territorial limitations are invalid where the applicable uninsured motor vehicle statutes are silent concerning the efficacy of such restrictions. *See Curtis v. Allstate Ins. Co.*, 473 F.Supp. 315, 316 (E.D.La. 1979), *aff'd* 631 F.2d 79 (5th Cir. 1980)(per curiam); *Bartning v. State Farm Fire & Cas. Co.*, 162 Ariz. 344, 347–48, 783 P.2d 790, 793–94 (1989)(en banc); *Robles v. California State Auto. Ass'n*, 79 Cal.App.3d 602, 145 Cal.Rptr. 115, 119–21 (Ct.App. 1978); *Fischer v. State Farm Mut. Auto. Ins. Co.*, 495 So.2d 909, 910–11 (Fla.Dist.Ct.App. 1986); *Degollado v. Gallegos*, 260 Kan. 169, 917 P.2d 823, 826–27 (1996); *Higbee v. USAA Cas. Ins. Co.*, 617 So.2d 51, 56 (La.Ct.App. 1993); *Heinrich-Grundy v. Allstate Ins. Co.*, 402 Mass. 810, 525 N.E.2d 651, 653–54 (1988); *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 648 A.2d 755, 758–61 (1994); *Pollard v. Hartford Ins. Co.*, 583 A.2d 79, 81 (R.I.1990); *Marchant v. South Carolina Ins. Co.*, 281 S.C. 585, 316 S.E.2d 707, 709 (Ct.App.1984); *Lovato v. Liberty Mut. Fire Ins. Co.*, 109 Wash.2d 43, 742 P.2d 1242, 1243–44 (1987)(en banc).

6. In considering the validity of provisions imposing territorial limitations on uninsured motorist coverage, courts in a number of jurisdictions have upheld such restrictions where the restrictions were shown to apply to the policy as a whole and not solely to the provisions for uninsured motorist coverage. *See, e.g., Bartning*, 783 P.2d at 793–94; *Brillo v. Hesse*, 560 So.2d 84, 87 (La.Ct.App. 1990); *Heinrich-Grundy*, 525 N.E.2d at 652;

*Pollard*, 583 A.2d at 81; *Lovato*, 742 P.2d at 1243.

7. The legislative intent giving rise to the adoption of our uninsured motorist law is "to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state." *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). In this regard, Section 66–5–301 should be read in conjunction with the Mandatory Financial Responsibility Act (MFRA). The MFRA states:

> The legislature is aware that motor vehicle accidents in the state of New Mexico can result in catastrophic financial hardship. The purpose of the [MFRA] ... is to require and encourage residents of the state of New Mexico who own and operate motor vehicles upon the highways of the state to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle. It is the intent that the risks and financial burdens of motor vehicle accidents be equitably distributed among all owners and operators of motor vehicles within the state.

NMSA 1978, § 66–5–201.1 (Repl.Pamp.1994). From this statutory language, we conclude the MFRA was primarily adopted in response to the legislative concern about "motor vehicle accidents in the state of New Mexico" and that its provisions apply to owners and operators of motor vehicles within New Mexico. Nothing in the overall statutory scheme indicates that the legislature intended to mandate broader geographical coverage for uninsured motorist coverage than for other types of coverage. *See, e.g., Fischer*, 495 So.2d at 910. Although Plaintiff argues that mandating worldwide coverage for uninsured motorists would further the statute's objective of expanding insurance coverage, we do not read the statute so expansively. As observed in *Degollado*, 917 P.2d at 825, "[T]o the extent that [policy] provisions do not conflict with or attempt to diminish or omit the statutorily mandated coverage, the limiting provisions will be controlling between the parties."

■ 8. Although the uninsured motorist statute is remedial and the statute should be liberally interpreted to further its objectives, a policy of liberal interpretation, absent a clear statutory provision to the contrary, may not negate reasonable and unambiguous policy limitations. *See State Farm Auto. Ins. Co. v. Ovitz*, 117 N.M. 547, 550, 873 P.2d 979, 982 (1994); *see also Archunde v. International Surplus Lines Ins. Co.*, 120 N.M. 724, 726–27, 905 P.2d 1128, 1130–31 (Ct.App.), *cert. denied*, 120 N.M. 533, 903 P.2d 844 (1995); *Hall*, 648 A.2d at 761. Our Supreme Court, while recognizing the importance of protecting the public from financially irresponsible drivers, has stated that "uninsured motorist coverage is 'not intended to provide coverage in every uncompensated situation.'" *Ovitz*, 117 N.M. at 550, 873 P.2d at 982 (citation omitted).

9. Plaintiff cites various New Mexico cases that have invalidated certain policy limitations or exclusions on uninsured motorist coverage. *See, e.g., Stinbrink v. Farmers Ins. Co.*, 111 N.M. 179, 180, 803 P.2d 664, 665 (1990) (provision excluding coverage for punitive damages against uninsured motorists violated the statute because a claimant may be legally entitled to receive punitive damages from an uninsured tort-feasor); *Continental Ins. Co. v. Fahey*, 106 N.M. 603, 605, 747 P.2d 249, 251 (1987) (insurance company was not entitled to offset amount of the workers' compensation it paid to the worker/insured against the amount it would have paid under its uninsured motorist policy because to do so would have reduced the insurer's liability below the statutory minimum) (superseded by statute as stated in *Mountain States Mut. Cas. Co. v. Vigil*, 121 N.M. 812, 814–15, 918 P.2d 728, 730–31 (Ct.App.1996)); *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 220–21, 704 P.2d 1092, 1096–97 (1985) ("class one" insureds are entitled to stack all uninsured and underinsured motorist policies for the purpose of determining underinsured tort-feasor's status; abstruse exclusionary clause that attempted to do otherwise was void); *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 330, 533 P.2d 100, 103 (1975) (exclusion attempting to restrict uninsured motorist coverage for death which occurred while insured occupied a vehicle owned by him but which was not the insured vehicle, held void).

10. Each of the cases relied upon by Plaintiff, we conclude, differs from the present case in that the limitation or exclusion sought to be applied in such cases was found to unreasonably diminish the statutorily mandated coverage. The rationale for invalidating such limitations or restrictions is absent here.

11. In *Chavez* our Supreme Court reiterated that insurance provisions are void when they conflict with a statute or if they conflict with the legislative purpose and intent for enacting such statute. *Chavez*, 87 N.M. at 329, 533 P.2d at 102. Although the Court also stated that "it is not the intent of the statute to limit coverage for an insured to a particular location or a particular vehicle," *id.* at 330, 533 P.2d at 103, we believe this statement, insofar as it may be read to apply to areas outside the United States, its territories or possessions, was dictum because the underlying issue in *Chavez* was whether a policy could exclude uninsured motorist coverage when, at the time of the loss sustained therein, the insured was occupying an uninsured vehicle also owned by him. We do not interpret *Chavez* or the provisions of Section 66–5–301 to require limitless geographical motor vehicle insurance coverage against losses caused by negligent, uninsured motorists.

12. Insurance rates vary according to the location and place of use of the insured vehicle. *See* 4A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 2632, at 168 (1969). To accept Plaintiff's argument would result in requiring worldwide uninsured motorist coverage for motor vehicle or liability policies issued or issued for delivery in New Mexico irrespective of the place of loss. As noted in *Brillo*, mandating unrestricted motor vehicle insurance coverage "would place an insurmountable burden upon insurance companies to defend claims arising anywhere in the world." *Id.*, 560 So.2d at 87. Nothing in the language of Section 66–5–301 or in the overall statutory scheme and its underlying public policy supports such interpretation.

13. Insurance policies are contracts and as such they may include exclusionary policy language as long as the terms are clear and do not conflict with public policy as embodied by express statutory language or by legislative intent. *Chavez*, 87 N.M. at 329, 533 P.2d at 102. We see no violation of public policy in the provisions of the instant policy. *Cf. State Farm Auto. Ins. Co. v. Kiehne*, 97 N.M. 470, 471, 641 P.2d 501, 502 (1982) (since uninsured motorist coverage is not mandatory on part of insured, failure of insured to carry such coverage does not violate public policy).

14. The territorial limitation in this case is unambiguous and clearly stated, the limitation is reasonable and applies to the entire policy, and the limitation does not conflict with the legislative objectives giving rise to the enactment of Section 66–5–301. Thus, we affirm the district court and uphold the validity of the territorial limitation contained in the policy.

## DENIAL OF PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

15. Alternatively, Plaintiff argues that even if the territorial limitation provision of the policy is upheld, the district court erred in denying his motion to amend his complaint to allege misrepresentation by Dairyland's agent concerning the extent of the policy's coverage. We disagree. Plaintiff filed his motion to amend his complaint on March 21, 1996, nineteen months after he filed his original complaint and three days after the district court had orally granted Dairyland's motion for summary judgment. The record reflects that Dairyland filed its answer to Plaintiff's complaint on September 20, 1994. The affidavit by Plaintiff's counsel that accompanied his motion to amend stated that there were no changes in the first count of the complaint on which the district court had granted summary judgment and "[t]hat on March 19, 1996, upon discussing the case with the [P]laintiff, facts were elicited that lead to the need for an additional count to be added to the complaint."

16. At the hearing on the motion to amend, Plaintiff's counsel argued that he first understood the facts concerning Plaintiff's misrepresentation claim after Plaintiff came to his office to discuss the effect of the district court's ruling on the motion for sum-

mary judgment. Plaintiff's counsel explained the delay in seeking to amend the complaint by stating:

> I don't know whether it was my fault for not exploring it more clearly before or if we were speaking about the policy and the subject didn't come up or what, but somewhere there were some crossed wires. I didn't understand that there was a representation made at the time he got the policy, but that was made clear at the time he came in at the time of your ruling [on the motion for summary judgment].

Dairyland argued against allowing the amendment because Plaintiff had over a year and a half to discuss the facts of the case and the new theory was advanced only after the district court had orally dismissed the case. The district court denied the motion after observing that the case had been filed in August of 1994 and that it would exercise its discretion to deny the amendment to "keep this case alive."

■ 17. A motion to amend the complaint that is made after a responsive pleading is filed is addressed to the sound discretion of the district court, and a reviewing court will not reverse the district court's decision absent a clear showing of an abuse of discretion. *See* NMRA 1997, 1–015(A); *Rivera v. King,* 108 N.M. 5, 9, 765 P.2d 1187, 1191 (Ct.App.1988). Where a motion to amend comes late in the proceedings and seeks to materially change Plaintiff's theories of recovery, the court may deny such motion. As observed in 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* Section 1487, at 623 (1990) (footnote omitted), "[I]f the [proposed] amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." *See also*

*Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1494 (10th Cir.1995) (untimeliness may constitute valid basis for denying leave to amend complaint), *cert. denied,* —— U.S. ——, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996).

■ 18. On the record before us, we cannot say the district court abused its discretion. "An abuse of discretion occurs when the court exceeds the bounds of reason, considering all the circumstances before it." *King,* 108 N.M. at 9, 765 P.2d at 1191. Based on Plaintiff's significant delay in seeking any amendment, Plaintiff's failure to show good cause for not raising the claim earlier, and the fact that the district court had granted Dairyland's motion for summary judgment before Plaintiff sought to amend the complaint, we affirm the denial of Plaintiff's motion to amend the complaint as within the district court's discretion. *See Hamilton v. Hughes,* 64 N.M. 1, 4, 322 P.2d 335, 336–37 (1958) (stating that an oral request to file an amended complaint after summary judgment was granted was untimely); *see also Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank,* 105 N.M. 433, 436–37, 733 P.2d 1316, 1319–20 (1987).

*CONCLUSION*

19. The district court's orders granting Dairyland's motion for summary judgment and denying Plaintiff's motion to amend his complaint are affirmed.

20. IT IS SO ORDERED.

BOSSON and WECHSLER, JJ., concur.