2003-NMCA-088

73 P.3d 246

**Leonard LOVATO, Mary Lovato and Monica Lovato, Plaintiffs–Appellants,**

v.

**CRAWFORD & COMPANY, a foreign Corporation, Defendant–Appellee.**

**No. 22,373.**

Court of Appeals of New Mexico.

May 13, 2003.

Brad D. Hall, Thomas L. Kalm, Kalm Law Office, P.C., Albuquerque, NM, for Appellants.

C. David Henderson, Paul S. Grand, Hatcher, Sullivan & Grand, P.A., Santa Fe, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} Plaintiffs, Leonard, Mary, and Monica Lovato, appeal the trial court's denial of their motion to amend their complaint, filed three weeks before trial, to add claims of breach of contract, unfair trade practices, and unfair claims practices. They argue that the trial court abused its discretion in denying the motion and that the error was not harmless, entitling them to a new trial on all issues. We disagree and affirm. We base our decision on a combination of (1) the lack of clarity with which Plaintiffs presented their new theories to Defendant in the trial court, (2) the near total failure to call the trial court's attention to Plaintiffs' having ever raised their new theories prior to their motion to amend, and (3) Plaintiffs' inability to cogently articulate their theories even as late as their tender of jury instructions and on appeal. In particular, Plaintiffs still have not described for us the theories, including the factual bases therefor, that were within what Defendant had notice of and that would not have required further discovery, and yet that were not foreclosed by the jury's verdict.

## FACTS AND BACKGROUND

{2} This action arose because of two fires that occurred at Plaintiffs' residence. The relatively minor damage from the first fire was adjusted by Defendant, Crawford & Co., which was hired by Plaintiffs' homeowner's insurance carrier. The day after the first fire, a representative from Crawford came to the residence for the adjustment. Arriving at the same time as the adjuster, and apparently called by Defendant, was Bill McMullen, described by Plaintiffs as a janitor, and by Defendant as a fire restoration contractor.

Mary Lovato signed an agreement with McMullen authorizing him to begin clean-up, which he started immediately. Several days later, while McMullen was still restoring the house from the small fire, the home and contents were completely destroyed by a propane fire. There was evidence at trial indicating that a flexible hose connecting the stove to the propane source was damaged when McMullen pulled the stove out to clean behind it, which allowed propane to escape and build up under the house. There was also evidence that the probable source of the ignition was the electricity McMullen temporarily installed to the house to keep his equipment running.

{3} Plaintiffs originally filed suit against McMullen and attempted to join Defendant in that action, but the suit was vacated due to McMullen's bankruptcy. Plaintiffs then filed a complaint in July 1999, naming Crawford as Defendant, alleging negligence on the part of McMullen and Defendant, and asking for unspecified damages. Defendant removed the case to the United States District Court for the District of New Mexico in August 1999. While this case was pending in federal court, Defendant filed a motion for summary judgment in April 2000 and again filed a motion for partial summary judgment in September 2000. Both parties submitted numerous memoranda and responses regarding these summary judgment motions, none of which was ruled upon by the federal court. A pretrial order was filed in June 2000. In late October 2000, the federal court remanded the case back to state court because it determined that it lacked subject matter jurisdiction over the case.

{4} On February 22, 2001, eighteen months after filing the initial complaint and three weeks before trial, Plaintiffs moved to amend their complaint, pursuant to Rule 1–015 NMRA 2003, adding claims titled "bad faith breach of duties under claims adjustment contract" and "unfair practices act." (Emphasis deleted.) There is no indication in the record that Plaintiffs requested a hearing on this motion, perhaps because the motion was filed so late that there was inadequate time for Defendant to respond. *See* Rule LR1–306(H) NMRA 2003 ("After the

filing of the motion, response and reply or the expiration of the applicable time limit in the absence of filing, the movant shall request a hearing ... by filing a request for hearing (LR1–Form A) with the clerk[.]"). Nor did Plaintiffs avail themselves of the trial court's expedited procedures designed for just this purpose. *See* Rule LR1–306(I). Accordingly, the trial court did not hear this motion until Plaintiffs requested to argue it at a presentment hearing on the day before trial.

{5} At that hearing on Friday, March 9, 2001, the trial court signed the order granting Defendant's motion for partial summary judgment on Plaintiffs' emotional distress claims, and denied Plaintiffs' motion to amend the complaint, determining that there would be substantial prejudice to Defendant to permit statutory and contractual claims that "had not ... been sufficiently raised to this point." Trial commenced the following Monday morning, March 12, 2001, addressing the negligence claims only, and resulted in a jury finding no negligence on the part of McMullen or Defendant and no liability on the part of Defendant. Plaintiffs appeal only the trial court's denial of their motion to amend the complaint.

## STANDARD OF REVIEW, INCLUDING STANDARD GOVERNING AMENDMENT OF PLEADINGS

{6} A motion to amend is addressed to the discretion of the trial court and will not be disturbed unless an abuse of discretion has occurred. *Constructors, Ltd. v. Garcia,* 86 N.M. 117, 118, 520 P.2d 273, 274 (1974). "An abuse of discretion occurs when the court exceeds the bounds of reason, considering all the circumstances before it." *Rivera v. King,* 108 N.M. 5, 9, 765 P.2d 1187, 1191 (Ct.App.1988), *limited on other grounds by Williams v. Cent. Consol. Sch. Dist.,* 1998–NMCA–006, ¶ 14, 124 N.M. 488, 952 P.2d 978. Amendments to the pleadings are favored and should be liberally permitted as justice requires. Rule 1–015. Amendments should be denied only where the motion is unduly delayed or where amendment would unduly prejudice the non-movant. *Hourigan v. Cassidy,* 2001–NMCA–085, ¶ 29, 131 N.M. 141, 33 P.3d 891. Thus, we must examine

whether there was an abuse of discretion under the lens of the liberal pleading rule.

## DISCUSSION

■ {7} Plaintiffs argue that the claims at issue in the motion to amend were already part of the pleadings and this motion merely clarified the claims they had been litigating all along. They argue that the federal court's pretrial order, which included "breach of contractual fiduciary duty" and "breach of insurance laws" as contested issues of law, should be binding upon the trial court. Plaintiffs assert that even if an amendment was required despite the federal court's pretrial order, they have shown excusable neglect because they believed the pretrial order was binding and they were only making explicit "what [they] thought was implicit throughout." *See State v. Elec. City Supply Co.*, 74 N.M. 295, 299, 393 P.2d 325, 327–28 (1964) (quoting the court below in suggesting that excusable neglect may justify failure to file motion to amend pleadings).

{8} Defendant argues that Plaintiffs did not offer a credible reason to explain their failure to amend the complaint until the day before trial. Defendant argues that Plaintiffs' new theories of liability would have involved the litigation of new issues that had not been the object of discovery or squarely brought into the litigation, with new remedies that had never been pleaded, even in the pretrial order. Defendant argued vigorously at the presentment hearing that it would be prejudiced by an addition of contractual and statutory claims for which it had no notice and that it would be exposed to damages it had not prepared to defend. On appeal, Defendant argues that, if we determine that the trial court abused its discretion, denial of the motion to amend did not harm Plaintiffs.

{9} Our task on appeal is to determine, based on the record before us, with the liberal rules of pleading in mind, whether the trial court abused its discretion by denying Plaintiffs' motion to amend the complaint. We will, therefore, examine the record and enumerate the allegations in the pleadings, memoranda, and pretrial order, as well as the motion to amend the complaint and the oral arguments thereon, in order to deter-

mine whether the trial court's denial "exceeds the bounds of reason." *Rivera*, 108 N.M. at 9, 765 P.2d at 1191.

## The Complaint

{10} The complaint alleged that McMullen was negligent by making a temporary electrical connection, stringing electrical cords throughout the home, damaging a propane line causing a propane leak, failing to have insurance, and filing bankruptcy. It alleged that Defendant was negligent in selecting an uninsured sole proprietor, in failing to inform Plaintiffs of McMullen's status, in failing to determine whether McMullen possessed the proper licenses, and in failing to fulfill its duty to ensure the experience and capabilities of McMullen. The complaint prayed for an undetermined amount of damages for the losses suffered. In short, the complaint sounded only in negligence and asked only for damages pursuant to the negligence.

## Pretrial Order

{11} A pretrial order was filed in federal court. The narrative description of the claim described only negligence and negligent hiring. However, "breach of contractual fiduciary duty" and unspecified "breach of insurance laws" was included in a list of contested issues of law. In signing the document, both parties agreed that the pleadings were deemed merged in the pretrial order. *See* Rule 1–016(E) NMRA 2003 (stating that pretrial orders control subsequent proceedings); *see also Whalley v. Sakura*, 804 F.2d 580, 582–83 (10th Cir.1986) (determining that the court must liberally construe the pretrial order to include the legal and factual theories inherent in the issues defined therein).

{12} At the hearing on Plaintiffs' motion to amend, the trial court determined that the pretrial order before the federal court did not effectively amend the complaint to the extent of the specific claims under the Unfair Practices Act and the specific contractual claims asserted by Plaintiffs in their motion to amend the complaint. The trial court did not fail to adhere to the pretrial order, as Plaintiffs claim, but rather rejected the specific claims asserted as having not been sufficiently described or pleaded in it. The trial

court determined that substantial prejudice to Defendant would result if Defendant was to be required to defend against these claims.

{13} Even if we were to assume that the mention of the contract and statutory claims in the pretrial order was a possible amendment of the complaint, it was within the discretion of the trial court to in effect re-amend the complaint and limit Plaintiffs' claims to those of which Defendant had fair notice, and we will not reverse that decision absent an abuse of discretion. *See* Rule 1–016E (indicating that a pretrial order may be modified to prevent manifest injustice); *Lewis ex rel. Lewis v. Samson*, 2001–NMSC–035, ¶ 25, 131 N.M. 317, 35 P.3d 972 (applying abuse of discretion standard in reviewing trial court's modification of pretrial order, and enumerating several factors in determining whether manifest injustice would result; including whether trial is imminent and the foreseeability of the need for addition discovery). *See also Becker v. Hidalgo*, 89 N.M. 627, 629, 556 P.2d 35, 37 (1976) (stating that the trial court has some discretion to modify issues at and before trial and, in particular, that trial court did not err in granting summary judgment despite the pretrial order, which said there were material issues of fact).

{14} As we determine below, mere mention of the possibility of a breach of contract claim, stated in unknown legal terms, or a violation of an unspecified statute was not sufficient to put Defendant on notice of the issues to be determined at trial, especially since the factual assertions in the pretrial order, like the complaint, described only negligence actions. Contractual and statutory claims, though mentioned in the pretrial order, were not recognizable or inherent in the asserted negligence theories and were not further explained. Therefore, we hold that the trial court did not abuse its discretion in not permitting litigation of claims mentioned in the pretrial order.

**Summary Judgment and Pretrial Motions and Memoranda**

{15} Plaintiffs claim that, in addition to the pretrial order, Defendant should have had notice of the contractual and statutory claims through various responses to motions or other memoranda by Plaintiffs. We review them in some detail, discussing the general nature of Plaintiffs' responses, as well as any specific mention of the claims at issue. According to the record, discovery ended in March 2000. In response to Defendant's first motion for summary judgment in April 2000, Plaintiffs "admit this is an action in tort for negligence[.]" In a response to Defendant's motion in September 2000, for partial summary judgment regarding a negligent infliction of emotional distress claim, which also was not pleaded but became apparent through discovery, Plaintiffs again admitted that this was an action in tort for negligence.

*Breach of Contract Claims*

{16} After the pretrial order's listing of the unpursued claim for "breach of contractual fiduciary duty," the next mention of a potential contract claim came in a memorandum in September 2000, where Plaintiffs asserted for the first time that they were third party beneficiaries intended to benefit from the contract between their insurance carrier, California Casualty, and Defendant, and that a claim for emotional distress due to property loss was proper under a breach of contract theory. This memorandum was not an assertion of a contract claim, but was in apparent reaction to Defendant's memorandum in support of its summary judgment motion on the emotional distress claim, in which it stated that New Mexico has recognized only a limited right to recovery for emotional distress resulting from property damage if it was pursuant to a mortuary contract. In its September 2000 reply brief, Defendant noted that Plaintiffs' response was the first time it had heard of the contract claim based on Plaintiffs' third party beneficiary status, and urged that it not be considered by the court. Defendant noted that it had no "information whatsoever about the contract, including the circumstances surrounding its formation or its terms, Plaintiffs have submitted no evidence that they were 'intended by' California Casualty and Crawford 'to be such a beneficiary,' that [n]either California Casualty [n]or Crawford had 'reason to know that such benefit [was] contemplated by the [other] as one

of the motivating causes of making the contract,' or that the Lovatos were anything more than 'incidental' beneficiaries." We note that this alleged contract was never discovered, and Plaintiffs have not pointed to any further evidence of this contract or any further factual basis to support this contract theory.

{17} The next mention of a contractual theory came in a supplemental memorandum filed on February 6, 2001, only six weeks before trial. In that memo, Plaintiffs allude to a contract by stating, "[t]his case is a wrongful adjustment case with bad faith claims against [Defendant]." In their motion to amend the complaint, filed on February 22, 2001, three weeks before trial, Plaintiffs allege a theory of "[i]nsurance contract breach in bad faith" because they were third party beneficiaries of the adjustment contract between Defendant and California Casualty. This amended complaint includes the factual bases for their negligence claims as stated in their original complaint, but fails to state a factual basis for the contract claim and fails to identify an actual contract.

{18} Though Defendant may have had at least a cursory notice of contractual claims, each mention of a breach of contract issue is curt, and it presented as a different kind of contract under a different theory each time, i.e., breach of contractual fiduciary duty, third party beneficiary of adjustment contract, and bad faith adjustment, giving no notice of exactly what theory Plaintiffs were pursuing, or what contract was actually at issue. Defendant argued at the presentment hearing that it had never seen the alleged contract in any of the discovery, that it knew nothing of its alleged terms, and that more discovery would be needed to proceed with this claim. We think that a mere mention that some kind of unknown, undiscovered, and possibly undetermined contract was breached, with no accompanying facts to support these theories is insufficient notice for a defendant to try to conduct discovery, let alone prepare a defense only weeks before trial.

{19} Consequently, we cannot say that the trial court's denial of the motion to amend to include a breach of contract claim because Defendant would be prejudiced was beyond the bounds of reason. "[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." 6 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1487, at 623 (1990); *see also Dominguez v. Dairyland Ins. Co.*, 1997–NMCA–065, ¶ 17, 123 N.M. 448, 942 P.2d 191 (stating same); *Hourigan*, 2001–NMCA–085, ¶ 29, 131 N.M. 141, 33 P.3d 891 (finding no abuse of discretion in denying amendment when new allegations made soon before trial might change a trial strategy); *Schmitz v. Smentowski*, 109 N.M. 386, 391, 785 P.2d 726, 731 (1990) ("The test of prejudice is whether the party had a fair opportunity to defend and whether it could offer additional evidence on the new theory.").

*Unfair Trade Practices*

{20} The first mention of a claim for violation of the Unfair Trade Practices Act was in the February 6, 2001, supplemental memorandum, filed only six weeks before trial and a year after discovery closed. Plaintiffs stated for the first time in the litigation, in one sentence at the end of the memo, that "an Unfair Practices Act claim is present," which provided for treble damages, punitive damages, and attorney fees. As Defendant argued at the presentment hearing, it had no notice of its exposure to treble damages until this memorandum was filed and there had been absolutely no discovery concerning the elements of an Unfair Trade Practices claim. "Where a motion to amend comes late in the proceedings and seeks to materially change Plaintiff's theories of recovery, the court may deny such motion[s]." *Dominguez*, 1997–NMCA–065, ¶ 17, 123 N.M. 448, 942 P.2d 191. We hold that the trial court did not abuse its discretion in denying the motion to amend the complaint to include an Unfair Trade Practices claim that was asserted only six weeks before trial. Moreover, as we discuss later, Plaintiffs fail to provide a factual basis for any Unfair Trade Practices claim.

*Unfair Claims Practices*

{21} Plaintiffs alluded to a claim for Unfair Claims Practices in April 2000, in a response to Defendant's first summary judgment motion, stating that "New Mexico's Unfair Claim Practices Act may apply to the instant action." They cited the relevant part of the statute, NMSA 1978, § 59A–16–20 (1997), and argued that Defendant breached a statutory duty "by coming up to the Lovato home and telling them through the adjuster that Mr. McMullen will do the work on your home [sic] was a representation that the Lovatos did not have the right to select a competent insured contractor to repair their home." They stated that a breach of the Unfair Claims Practices Act is "bad faith." This is the only reference found in the record, until the motion to amend the complaint was filed, three weeks before trial, to either the Unfair Claims Practices Act or a claim of bad faith with respect to a statutory claim. In that same response, after describing the negligence, Plaintiffs also state that "in doing so [Defendant] may have violated the insurance code[.]" As we stated before, Plaintiffs failed to alert the trial court to these specific references in the record during the hearing on the motion to amend. Further, we are reluctant to hold that one reference found in a response to summary judgment motion provides sufficient notice of the issue of whether Defendant knowingly misled Plaintiffs into thinking that they did not have the right to select their own contractor.

{22} However, even if we were to hold that there was sufficient notice, we determine that Plaintiffs were not harmed by the exclusion of this claim at trial. This misrepresentation theory was advanced at trial in the context of the negligence claims, and the jury specifically found that Defendant did not fail to use ordinary care by failing to inform Plaintiffs of their right to select the person to restore their residence. Therefore, if there was error in not including this claim at trial, it was harmless because the jury rejected Plaintiffs' theory that they were misled into believing that they could not choose their own contractor. *See* Rule 1–061 NMRA 2003 (stating the harmless error rule); *Kennedy v. Dexter Consol. Schs.*, 2000–NMSC–025, ¶ 26, 129 N.M. 436, 10 P.3d 115 (stating that in civil litigation, error is not grounds for setting aside a verdict unless it is inconsistent with substantial justice or affects the substantial rights of the parties); *see also Lewis*, 2001–NMSC–035, ¶ 25, 131 N.M. 317, 35 P.3d 972 (stating that, under the ultimate standard of abuse of discretion, an appellate court will not reverse unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors" (internal citation and quotation marks omitted)).

{23} Plaintiffs argue that any error is not harmless because the Unfair Claims Practices Act, like a breach of contract action, does not require a culpable state of mind. Plaintiffs argue that a "simple misrepresentation" is all that is needed to prove a violation, which is a lesser standard than negligence. They argue that the same jury, while not finding that Defendant was negligent in its representations of McMullen, may have nevertheless found a misrepresentation under the Act. The Act, however, requires that an insurer must *knowingly* misrepresent to insureds pertinent facts relating to coverages at issue. Section 59A–16–20 (emphasis added). We note again that the only theory of misrepresentation that Plaintiffs put forth during the litigation was that Defendant represented to Plaintiffs that they did not have the right to select their own contractor to repair their home, which theory was expressly rejected by the jury. Because the jury found that Defendant did not breach any duty to inform Plaintiffs of their right to choose a contractor, and therefore there could be no misrepresentation, there could not then be a *knowing* misrepresentation as required by the Act. We determine that Plaintiffs were not harmed by the trial court's exclusion of an Unfair Practices Claim because the jury ultimately found for Defendant on the same facts pursuant to the negligence theory.

**Confirmation that Plaintiffs' Claims Lacked the Requisite Clarity and Additional Reasons for No Abuse of Discretion**

*Motion to Amend the Complaint*

{24} As previously noted, approximately three weeks before trial, Plaintiffs

filed a motion to amend their complaint, adding claims for "bad faith breach of duties under claims adjustment contract" and "unfair practices act." This motion to amend did not distinguish separate claims for Unfair Claims Practices and Unfair Trade Practices.

{25} It is apparent to us that Plaintiffs were either inartful and unclear in their pleadings and motions, or they simply had not fully developed either the contractual or statutory claims, even three weeks before trial when the motion to amend was filed, and even on the eve of trial when the motion to amend was argued. Neither do Plaintiffs ever adequately distinguish between the two distinct statutory claims they now tell us on appeal that they "actually intended" all along. Accordingly, we conclude that the motion to amend does not clarify claims that had been litigated all along, as Plaintiffs argue, and we conclude that lack of clarity resulting in lack of fair notice to Defendants does not constitute excusable neglect for failing to timely amend the complaint. *See* Black's Law Dictionary 1055 (7th ed.1999) (defining excusable neglect as being because of some unexpected or unavoidable hindrance or accident, and not because of the party's own carelessness, inattention, or willful disregard of the court's process); *see also Padilla v. Estate of Griego,* 113 N.M. 660, 665, 830 P.2d 1348, 1353 (Ct.App.1992) (affirming the general rule that parties are bound by the conduct of their attorneys).

█ {26} Though we note that Defendant may have misled the trial court when it denied, during the presentment hearing, that an Unfair Practices Act claim or the term "bad faith" had ever been mentioned in the case, Defendant may have simply not had sufficient notice of these legal theories to have considered that they may have needed to defend against them. Plaintiffs had an opportunity at that hearing to refute Defendant's arguments and point to the places in the litigation where these claims arose, as we have done in this opinion, but Plaintiffs failed to do so. The transcript reveals that the presentment hearing was interrupted by a jury filing through the courtroom in the middle of Plaintiffs' argument in favor of amending the complaint. Right before this inter-ruption, one of Plaintiffs' counsel stated to the trial court that the claims sought in the amendment were in various memoranda. After the interruption, Defendant's counsel alerted the trial court to the practice of only allowing one counsel to argue, following which lead counsel resumed the argument, never mentioning the memoranda and relying solely on the pretrial order. Such an interruption, while distracting, does not excuse Plaintiffs from alerting the trial court to the specifics of their argument. *Cf. State v. Coffin,* 1999–NMSC–038, ¶ 23, 128 N.M. 192, 991 P.2d 477 (stating that in order to preserve argument for appeal, it is incumbent upon appellants to alert trial court to claimed errors); *Diversey Corp. v. Chem–Source Corp.,* 1998–NMCA–112, ¶ 13, 125 N.M. 748, 965 P.2d 332 (determining that if a plaintiff objects to a proposed ruling, it must alert the trial judge).

*Jury Instructions*

{27} Our conclusion that Plaintiffs' notice was inadequate and their claims had not been litigated is also supported by Plaintiffs' tendered jury instructions at trial. For the record, Plaintiffs submitted jury instructions pursuant to UJI 13–302A through -E NMRA 2003, which included breach of contract, unfair trade practices, violation of claims handling law, and insurance bad faith. The instructions, however, contain no factual contentions whatsoever. *See* UJI 13–302B (use notes) (requiring a statement of facts to support each contention). This confirms our determination that Plaintiffs had not, even at trial, developed sufficient facts to properly litigate the claims of breach of contract, unfair trade practices, or violation of claims handling law. Further, this supports the trial court's ruling and Defendant's argument that there was not adequate notice of claims before trial.

█ {28} We note that Plaintiffs' jury instruction regarding Unfair Claims Practices does contain specific facts; however, they are nearly identical with the facts describing the negligence claim. The factual basis for the negligence claim was described as follows in the instructions given to the jury:

1. Crawford & Company failed to exercise ordinary care in its role as the adjuster of the claim in at least one of the following ways:

    a. Crawford & Company failed to inform plaintiffs of their right to select the person to perform the fire restoration of the residence; or

    b. Crawford & Company brought William McMullen to the plaintiffs['] residence to perform work for the plaintiffs without properly inquiring into Mr. McMullen's background[.]

The tendered instruction for the Unfair Claims Practices stated:

    Defendant communicated that Mr. McMullen was selected to restore their fires [sic] damaged home, when in fact, [D]efendant did not have authority to call Mr. McMullen and the Lovatos were entitled to select their own contractor. Or

    Defendant did not select a contractor who was licensed, insured and bonded although Plaintiff's [sic] were entitled under the policy to a qualified contractor with the required license and insurance.

As noted above, excluding the Unfair Claims Practices claim did not harm Plaintiffs because the jury rejected Plaintiffs' theory that they were misled into believing they could not choose their own contractor and the jury rejected Plaintiffs' argument that Defendant failed to exercise ordinary care by bringing McMullen to their residence without properly inquiring into McMullen's background. Thus, though this proposed instruction regarding the Unfair Claims Practices may have been factually adequate to establish the claim, since the factual description is nearly identical to the instructions given to the jury for the negligence claims, even if the trial court erred in refusing to submit them to the jury, the error did not harm Plaintiffs.

{29} We also note that the trial court issued a directed verdict on the negligent hiring claim, but did send two limited claims to the jury. The trial court noted that it wished the claims had been "pled more directly," but went out of its way to write jury instructions tailored to those claims so that the jury could decide at least the claims for which sufficient evidence was introduced at trial and so that Plaintiffs' claims could be decided on the merits.

*Brief on Appeal*

{30} Similarly, Plaintiffs' brief on appeal is not helpful in understanding exactly what contractual and statutory theories they had planned to present at trial. The brief is written largely as a response to Defendant's memorandum in opposition to summary reversal, which is not considered as part of this appeal that is now being decided on the general calendar. *See State v. Aragon,* 109 N.M. 632, 634, 788 P.2d 932, 934 (Ct.App. 1990) (stating that the appellate rule concerning briefing does not provide for incorporation or arguments contained in earlier pleadings, and that cases are decided on the basis of the issues, argument, and authority contained in one set of briefs as provided in Rule 12–213 NMRA 2003). In other words, the Plaintiffs' brief, much like their pretrial memoranda, is primarily a reaction to earlier papers filed by Defendant, rather than a statement of their case, telling this Court what facts were pleaded and litigated that establish the claims they argue should have been submitted to the jury. In addition, like they did in the trial court, Plaintiffs throw out legal theories without connecting them to any elements and any factual support for the elements. For example, in one page of their brief in chief, Plaintiffs assert that the following claims are at issue: "the contract and insurance practice violations," the "UPA claims," "[c]laims for bad faith adjusting, unfair adjusting," "breach of contractual fiduciary duties," "breach of insurance laws," and "issue of insurance practices." The notable exception is a very short discussion of a breach of adjustment contract theory that had never been raised before this appeal and therefore will not be considered here. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

{31} In sum, even though Plaintiffs assert that they had been litigating breach of contract and statutory violation claims from the

beginning of this action, many of their statements belie this assertion, and they have failed to clearly articulate the factual bases for these claims as late in the action as the motion to amend the complaint, the trial, or the appeal. This is a civil case, and Plaintiffs will not be aided by a doctrine of fundamental error. *See generally Gracia v. Bittner*, 120 N.M. 191, 194–98, 900 P.2d 351, 354–58 (Ct.App.1995) (discussing the very limited role of fundamental error in civil cases and noting the importance of counsel's role in ensuring that facts and issues are properly presented to the jury). Under these circumstances, we cannot say that the trial court exceeded the bounds of reason in determining that it would not be fair to Defendant to require it to litigate unformulated contractual and statutory claims.

**CONCLUSION**

{32} We hold that the trial court did not abuse its discretion in denying Plaintiff's motion to amend the complaint. We accordingly affirm.

{33} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CELIA FOY CASTILLO, Judges.