**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2014-NMSC-004

Filing Date: December 30, 2013

Docket No. 33,704

ALBUQUERQUE CAB COMPANY and
YELLOW CHECKER CAB COMPANY, INC.,

                Appellants,

v.

NEW MEXICO PUBLIC REGULATION COMMISSION,

                Appellee,

and

GREEN CAB, LLC,
d/b/a GREEN CAB COMPANY,

                Real Party in Interest.

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Sanchez, Mowrer & Desiderio, P.C.
Frederick M. Mowrer

Albuquerque, NM

for Appellants

Margaret Kendall Caffey-Moquin
Santa Fe, NM

for Appellee

**OPINION**

**BOSSON, Justice.**

1

**{1}** The New Mexico Public Regulation Commission (PRC) granted Green Cab, LLC d/b/a Green Cab Co., (Green Cab) a certificate of authority to provide taxi service within Bernalillo County and to the rest of the state. Albuquerque Cab Co. (ABQ Cab) and Yellow Checker Cab (Yellow Cab), presently doing business in Bernalillo County, appeal under this Court's jurisdiction pursuant to the Motor Carrier Act and our Rules of Appellate Procedure. *See* NMSA 1978, § 65-2A-35(A) (2003) (appeals from a final order may be taken directly to the Supreme Court within thirty days); *see also* Rule 12-102(A)(2) NMRA (appeals from the PRC "shall be taken to the Supreme Court").

**{2}** ABQ Cab and Yellow Cab assert that the PRC erred by: (1) not scheduling a hearing on whether Green Cab should be issued a certificate of authority, (2) denying their motions to intervene as "interested persons" in the Green Cab proceedings, (3) granting Green Cab authority to operate a taxi service, (4) and finally, issuing Green Cab temporary authority to operate a taxi service in Bernalillo County to all parts of the state. For the reasons discussed below, we hold that the PRC committed reversible error by not holding a public hearing in which ABQ Cab and Yellow Cab could participate as intervenors, contrary to the statutory requirements of the Motor Carrier Act. Because the PRC did not follow the required procedure, we need not address the remaining arguments regarding Green Cab's temporary or permanent authority. Accordingly, we reverse and remand to the PRC for further proceedings consistent with this opinion.

**BACKGROUND**

**{3}** On May 18, 2011, Green Cab filed an application for certificate and temporary authority to operate a taxi service in Bernalillo County to all parts of New Mexico. Employees of the PRC (PRC Staff) filed notice of Green Cab's application on May 24, mailed notice to authorized motor carriers (including ABQ Cab and Yellow Cab), and published notice in the Albuquerque Journal.

**{4}** On June 8, 2011, ABQ Cab and Yellow Cab filed a protest and motion to intervene in the matter of Green Cab's certification. A single PRC Commissioner, Theresa Becenti-Aguilar, responded to the motion, and citing as authority 1.2.2.30(B) NMAC (09/01/08), issued an order that required ABQ Cab and Yellow Cab to file a response with supporting facts in "sufficient detail" to "support the allegation that granting . . . temporary authority or a certificate would adversely impact their ability to continue to provide transportation services in the future." ABQ Cab and Yellow Cab were also asked to include any allegations that could be described and supported with sufficient factual detail "that [Green Cab] did not meet one or more of the criteria for issuance of the operating authority or temporary authority." Further, the Commissioner Becenti-Aguilar's order stated that "[f]ailure to comply . . . shall result in the denial of the motion to intervene."

**{5}** On July 11, 2011, ABQ Cab and Yellow Cab filed their response, which included some analysis regarding the effect of allowing additional competition into the taxi cab market. PRC Staff opposed intervention, arguing that intervention "impose[d] costs on the

applicant and the public that [Staff felt were] contrary to New Mexico's transportation policy," and therefore, the PRC "must require protestants to make the showings required by NMSA [1978, Section] 65-2A-13(C) [(2013)] before allowing them to intervene."

**{6}** The PRC granted Green Cab conditional temporary authority on August 10, 2011, and in a separate order that same day, appointed a hearing examiner based on the "issues presented in the Motion to Intervene." Regarding PRC Staff's opposition, the order appointing a hearing examiner observed, "[i]n the future, Staff should request permission from the Commission to file such a brief."

**{7}** On October 6, 2011, the appointed hearing examiner filed an order allowing ABQ Cab and Yellow Cab to respond to PRC Staff's brief opposing intervention. ABQ Cab and Yellow Cab filed their response on October 18, 2011. On February 7, 2012, the case was reassigned to a new hearing examiner, Elizabeth C. Hurst. On March 16, 2012, Hearing Examiner Hurst denied the motion to intervene without a hearing.

**{8}** The intervention denial was based in part on Hearing Examiner Hurst's determination, again without a hearing, that "Section 65A-2-13(C) [sic] does not provide automatic intervention status for any carrier who makes unsupported and speculative claims in a case." Hearing Examiner Hurst observed that the PRC is authorized to promulgate rules to implement the Motor Carrier Act under NMSA 1978, Section 65-2A-4 (2003, amended 2013), and thus, the PRC created a rule requiring that interested parties must "provide the Commission with credible, reliable, or verified facts or details that would support their allegations" before intervention may be granted. *See* 18.3.2.18(A) NMAC (01/01/2005) (establishing that a motion to intervene should provide sufficient factual support for any allegation). Relying on the rule, and the lack of sufficiently detailed support for intervention, Hearing Examiner Hurst concluded that the motion to intervene "should be denied."

**{9}** Having denied intervention to ABQ Cab and Yellow Cab, the hearing examiner then granted PRC Staff's motion to process Green Cab's application as an *uncontested* matter. Thereafter, without ever holding a public hearing, the PRC adopted Hearing Examiner Hurst's April 20, 2012 recommendations and findings of fact, reassigned Green Cab's application as an *uncontested* matter, and granted Green Cab a certificate of authority. One PRC Commissioner, Jason Marks, dissented from the final order. Although noting that the Motor Carrier Act "plac[ed] inappropriate and unnecessary barriers to market entry," Commissioner Marks nonetheless found that ABQ Cab and Yellow Cab had met the statutory requirements to intervene, and therefore, should have been afforded a hearing to determine "the impact of an application on existing motor carriers." This appeal follows from the PRC's final order.

**DISCUSSION**

**{10}** We have been down this road before in *T-N-T Taxi v. New Mexico Public Regulation Commission*, 2006-NMSC-016, 139 N.M. 550, 135 P.3d 814, an opinion we will discuss

3

subsequently in more detail. Again, we are called to review the PRC's construction of the Motor Carrier Act. "The primary goal in interpreting a statute is to give effect to the Legislature's intent." *T-N-T Taxi*, 2006-NMSC-016, ¶ 5. We look first to the Legislature's language, giving effect to the plain meaning of the words used, unless doing so would lead to absurdity, contradiction, or injustice. *Id.* We review de novo an administrative agency's statutory construction and determination of legislative intent. *Id.* We turn first to the then-applicable statutes, which we observed in *T-N-T Taxi* are not a model of clarity. *See Id.* ¶ 6.

**{11}**     NMSA 1978, Section 65-2A-5(C) (2003, amended 2013) provides that "[t]he commission *shall* hold a public hearing on an application whenever an interested person protests the application during the notice period . . . ." (Emphasis added.) Under New Mexico's codified rules of statutory construction, "'[s]hall' . . . express[es] a duty, obligation, requirement, or condition precedent." NMSA 1978, § 12-2A-4(A) (1997). Therefore, if an interested person, as defined in the Act, protests an application, the PRC *must* hold a public hearing on the protested application. We said as much in *T-N-T Taxi*. *See T-N-T Taxi*, 2006-NMSC-016, ¶ 8. The PRC may not by regulation undercut that which is required by statute. *Jones v. Emp't Servs. Div. of Human Servs. Dep't*, 1980-NMSC-120, ¶ 3, 95 N.M. 97, 619 P.2d. 542 ("An agency by regulation cannot overrule a specific statute.").

**{12}**     The Motor Carrier Act defines an "interested person" as "a motor carrier operating over the routes or in the territory involved in an application or grant of temporary authority . . . ." NMSA 1978, § 65-2A-3(T) (2007, amended 2013). Both ABQ Cab and Yellow Cab operate as motor carriers in Bernalillo County, the same territory in which Green Cab applied to operate. Therefore, they are "interested persons." As such, because the Motor Carrier Act required a "public hearing on [Green Cab's] application whenever an interested person protests," ABQ Cab and Yellow Cab were entitled a public hearing. *See* § 65-2A-5(C). In its briefing to this Court, the PRC does not address the fact that both ABQ Cab and Yellow Cab meet the statutory definition of an interested person, entitling their protest to a public hearing.

**{13}**     Instead, to justify rejecting ABQ Cab and Yellow Cab's request for a public hearing, the PRC relies on a stated legislative policy directive that it must streamline the application process for certifications. *See* NMSA 1978, § 65-2A-2 (2003, amended 2013) (stating the transportation policy under the Motor Carrier Act). "It is the policy of this state to foster the development, coordination and preservation of a safe, sound and adequate motor carrier system . . . by streamlining and promoting uniformity of state regulation of motor carriers." *Id.* The Motor Carrier Act also states, "[t]he commission shall streamline and simplify to the extent possible the process for approving applications." Section 65-2A-5(B). To the extent that PRC rules impose additional informational preconditions to a protestant's right to a public hearing, the PRC seeks to justify those conditions in the name of streamlining the application process and removing unnecessary impediments to competition.

**{14}**     Streamlining, however, is not a defense to statutory obligations. Even with the goal in mind of simplifying application procedures, the PRC must follow statutory law. It may

4

not by regulation impose requirements that are greater than, and inconsistent with, those set forth by the Legislature. *See T-N-T Taxi*, 2006-NMSC-016, ¶ 8 ("Although our interpretation of the Motor Carrier Act is influenced by the legislative declaration that it sought to streamline the regulation of motor carriers, we are not convinced that the Legislature wanted to streamline the regulation of motor carriers by having the PRC review all applications for permits as uncontested matters." (citation omitted))

**{15}** The PRC's rules impose a greater burden on "interested persons" who seek to protest at a public hearing—including those like ABQ Cab and Yellow Cab who already serve customers in the same area—than the burden already established by the Motor Carrier Act. PRC Staff interprets Section 65-2A-3(T), to authorize the PRC to require threshold factual showings by interested persons, based on 18.3.2.18(A) NMAC (01/01/2005), before allowing interested persons to intervene. Thus, according to PRC Staff, a party seeking status as an intervenor must, in addition to meeting the statutory definition of an "interested person" under Section 65-2A-3(T), "state the movant's interest . . . specifically allege that the applicant . . . does not meet one or more of the criteria for issuance of the operating authority or temporary authority, and describe in sufficient detail the facts known to the movant supporting the allegation." 18.3.2.18(A) NMAC.

**{16}** Further, the PRC argues that under 1.2.2.30(B) NMAC, a single commissioner had the authority to review ABQ Cab and Yellow Cab's motion to intervene and deny the motion because it did not meet the requirements of PRC's rules. *See* 18.3.2.18(A) NMAC (providing the requirements necessary to contest an application). Consequently, the PRC reasons, a single commissioner could deny a party status as an intervenor, and thus, turn a contested application into an uncontested application, negating the mandatory public hearing required by the Motor Carrier Act.

**{17}** The PRC's reasoning overlooks the requirement of Section 65-2A-5(C), whereby a public hearing must be held upon the filing of a protest; it does not turn on the grant of a party's status as an intervenor. *See* § 65-2A-5(C). Further, "'protest' means a document filed with the commission by an interested person that expresses an objection to a matter before the commission"; it does not require that the interested person also have intervenor status. *See* § 65-2A-3(T), (JJ).

**{18}** Appearing to parse the words of the statute, the PRC does not dispute ABQ Cab and Yellow Cab's "general statutory right to *file* a protest," which was the specific issue we decided in *T-N-T Taxi*. *See T-N-T Taxi*, 2006-NMSC-016, ¶ 4. The PRC, however, does distinguish between *filing* a protest and actually being allowed to participate in a public hearing, especially when the protestants "utterly failed to meet the [PRC's] rule requirements for intervention." The PRC's argument misses the essential point. Regardless of their motion to intervene, ABQ Cab and Yellow Cab were statutorily entitled to air their protest at a public hearing. *See* § 65-2A-5(C). No rule or regulation could take that away. Ironically, even the PRC's own rules seem to recognize that right. According to the rule regarding a contested application for a certificate of authority, "[t]he hearing examiner *shall*, within (10)

days of appointment, issue a notice of hearing setting a hearing to be held withing sixty (60) days from the date of appointment." 18.3.2.18(B) NMAC (01/01/2005) (emphasis added).

**{19}** The PRC argues that *T-N-T Taxi*, is inapposite to this case. The PRC states that *T-N-T Taxi* "only goes to whether the Motor Carrier Act, as then amended through the inclusion of statutory language expressing a preference for a streamlined application process, *precluded* a motor carrier from filing a protest to a permit application." (Emphasis added.) In distinguishing the cases, the PRC relies specifically on paragraph eleven of the *T-N-T Taxi* opinion, where it determines that this Court "deemed it 'important' that the intervenors . . . filed their motions to intervene 'pursuant to the instructions provided them by the PRC.'" *T-N-T Taxi*, 2006-NMSC-016, ¶ 11. The PRC also emphasizes that the "then-applicable PRC rule, [required that] an intervention of right was granted whenever the moving party demonstrated *a substantial interest* in the PRC action."

**{20}** The PRC's interpretation of *T-N-T Taxi* overemphasizes whatever weight we placed on the "instructions provided them by the PRC." In *T-N-T Taxi*, the core issue was not whether the parties had followed the instructions or the regulations in filing their protest, or whether the rule *required* a demonstrated substantial interest. To the contrary, the holding in *T-N-T Taxi* was based on the same statute, Section 65-2A-5(C), that applies in this case. We held that "[t]he Motor Carrier Act requires the PRC to consider whether the operations of [the intervenor] motor carriers will be endangered or impaired to an extent contrary to the public interest. Intervenors therefore have a substantial interest in the proceedings . . . ," because the "[i]ntervenors' operations and transportation services [were] in the same geographic location covered in [the] permit application." *T-N-T Taxi*, 2006-NMSC-016, ¶ 13. Thus, our emphasis was not on what the rule required, but that the parties were going to be operating in the same territory, and under the Motor Carrier Act were entitled to be heard. *See id.* ¶¶ 11-13.

**{21}** *T-N-T Taxi*'s reasoning applies to this case. We reject any other reading of this Court's prior opinion. ABQ Cab and Yellow Cab are operating in the same geographic territory as that covered by Green Cab's application. Although a certificate of authority is at issue here, and not a permit, thereby implicating NMSA 1978, Section 65-2A-8 (2003, amended 2013) not NMSA 1978, Section 65-2A-10 (2005, amended 2013) (the statue at issue in *T-N-T Taxi*), the right to protest and be heard in a meaningful way is the same; it is premised on the same line of thought. While the Legislature has expressed a desire to streamline the application process, that goal should not be accomplished at the expense of existing, certified motor carriers. *Compare* § 65-2A-5(B), *with* § 65-2A-5(C); *see also* § 65-2A-8(C) ("Before granting a certificate to an interstate common motor carrier of persons, the commission shall consider the effect that issuance of the certificate would have on existing motor carriers . . . ."). Reading Section 65-2A-5(B) together with Section 65-2A-5(C) evidences a legislative intent to streamline by allowing permissive hearings upon a protest by someone other than an interested person, but providing a mandatory hearing upon the protest of an interested person—in this case ABQ Cab and Yellow Cab. *Id.*; *see also* § 65-2A-2(T) (an interested person is defined by the overlap of geographic territory).

**{22}** Our understanding of the Legislature's intent is reinforced by recent legislative amendments to the Motor Carrier Act that speak directly to the facts in this case. Specifically, in 2013 the Legislature rewrote the Act to say, "[t]he commission shall hold a hearing on an application whenever a protest is filed within the notice period . . . [and] . . . shall allow a protesting carrier to proceed as an intervenor in the application proceeding." Section 65-2A-13(B). While a new law does not define the rights and obligations codified under a prior law, in this case it appears that the new law simply clarifies what the Legislature intended all along.

**{23}** We conclude that under the Motor Carrier Act at the time ABQ Cab and Yellow Cab filed their protests, motor carriers operating over the same routes or territories involved in a new application for a certificate of authority may protest an application and participate in a public hearing. Upon the filing of that protest, the PRC was required to hold a public hearing and consider the "effect that the issuance of the certificate would have on existing motor carriers," before it decided to grant or deny the certificate. *See* § 65-2A-8(C).

**{24}** Because we conclude that the PRC acted outside its grant of statutory authority in proceeding as if this were an *uncontested* matter, not requiring a public hearing, we reverse and remand so that a proper public hearing may be conducted. Accordingly, we do not need to reach the issue of whether the PRC properly approved Green Cab's application for certificate and temporary authority; that will be decided anew after a public hearing.

**{25}** Although these protestants are entitled to public hearing, we do not limit the authority of the hearing examiner with respect to the conduct of that proceeding. A hearing examiner, being vested with quasi-judicial authority, has sound discretion in how to manage that hearing, including imposing reasonable demands upon the parties with respect to offers of proof and refinement of issues. We caution, however, that such authority should not be reposed in the PRC Staff, which participates in the hearing more as an advocate for a particular position, one that at times may conflict with certain parties.

**CONCLUSION**

**{26}** We reverse and remand to the PRC for further proceedings consistent with this opinion.

**{27}** **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

7

_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**BARBARA J. VIGIL, Justice**

**Topic Index for** *Albuquerque Cab Co. v. N.M. Pub. Regulation Comm'n*, **No. 33,704**

**ADMINISTRATIVE LAW**
Hearings
Judicial Review
Legislative Intent

**CIVIL PROCEDURE**
Intervention

**CORPORATIONS**
Public Regulatory Commission

**GOVERNMENT**
Motor Carriers

**STATUTES**
Interpretation
Legislative Intent