2003-NMCA-032

62 P.3d 1217

**Robert E. HEDICKE and Donna J. Kelley–Hedicke, Plaintiffs–Appellees/Cross–Appellants,**

v.

**Thomas S. GUNVILLE and Tana E. Gunville, Defendants–Appellants/Cross–Appellees.**

**Nos. 22,473, 22,485.**

Court of Appeals of New Mexico.

Nov. 21, 2002.

Certiorari Denied, No. 27,866, Feb. 3, 2003.

Robert E. Hedicke, Donna J. Kelley–Hedicke, El Paso, TX, Pro Se Appellees/Cross–Appellants.

Robert L. Diaz, Santa Fe, NM, for Appellants/Cross–Appellees.

*OPINION*

PICKARD, Judge.

{1} This appeal and cross-appeal concern a dispute about the lease with an option to buy of a residence and a 17–acre parcel of land near Cloudcroft, New Mexico. The property is owned by the Defendants–Appellants/Cross–Appellees (the Gunvilles) and was leased to Plaintiffs–Appellees/Cross–Appellants (the Hedickes). In November of 1995 the Gunvilles entered into a lease agreement with John and Sandra Hassenflu, who are not parties to this lawsuit. The lease included an option to purchase this parcel. The Hassenflus paid the Gunvilles $50,000 in two installments of $25,000, which the lease referred to as a security deposit. The lease also contained a provision to apply this $50,000 deposit towards the purchase price in the event the tenants elected to purchase the property. The term of the lease was for ten years, and called for rent payments of $1,500 per month and a total purchase price of $400,000. The Hassenflus assigned their interests in the lease and purchase option to the Hedickes in March of 1997, and the parties agreed to a monthly rental increase to $1,600 per month. The Hedickes stopped paying on June 1, 1998, and paid no rent at all through November 30, 1999. On November 23, 1999, the house on the property caught fire and was completely destroyed. After the fire, the Hedickes paid the Gunvilles $100 each month to continue to use the property for their horses until the trial court issued a writ of restitution on August 24, 2000.

{2} The Hedickes brought this suit against the Gunvilles in September of 1998 for interest they claimed was due on the $50,000 security deposit, for conversion of the $50,000, and for punitive damages. The Gunvilles answered and counterclaimed for breach of contract for failure to pay rent and for failure to pay late fees, and they filed a motion for restitution of the premises at the same time. The Hedickes defended on the basis that they were abating rent pursuant to

the New Mexico Uniform Owner–Resident Relations Act (UORRA), NMSA 1978, §§ 47–8–1 through –51 (1975, as amended through 1999), and responded to the Gunvilles' motion for restitution claiming retaliation in violation of the UORRA.

{3} At trial, the Gunvilles maintained that the $50,000 security deposit was in fact a down payment for the purchase option and that the parties had intended for this to be a purchase, not merely a lease. The Gunvilles argued that, as a lease with an option to buy, the agreement was not governed by the UORRA. The Hedickes argued that the UORRA governed the lease and that, under its provisions, they were entitled to interest on the security deposit and to abate rent when the Gunvilles failed to properly maintain the premises.

{4} The trial court ruled that the UORRA governed the lease agreement because the Act was to be broadly construed, but conceded that the agreement was not a pure lease and not a pure contract for sale, that the parties did not intend for the UORRA to govern it, and that the UORRA was not written with this kind of tenancy in mind. The trial court ruled that the $50,000 security deposit was truly a down payment or the consideration given to the Gunvilles for the purchase option, or both, and therefore there were no interest payments due and there could be no conversion. The trial court ultimately granted directed verdicts in favor of the Gunvilles on the claims of interest, conversion, and punitive damages. The trial court directed a verdict in favor of the Gunvilles on their counterclaim for breach of contract because it ruled that the Hedickes were not entitled to abate rent under the UORRA or under the terms of the lease agreement and were therefore required to pay rent. The trial court also ruled that since there was no right to abate rent, there could be no retaliation as a matter of law. The trial court directed a verdict in favor of the Hedickes on the Gunvilles' claim for late fees, ruling that the Gunvilles did not adhere to the notice requirements in the UORRA. Finally, the trial court granted the Gunvilles' petition for restitution, determining that the

lease was terminated when the premises were destroyed by the fire.

{5} At the close of the trial, the Gunvilles moved for an award of attorney fees as the prevailing party pursuant to the UORRA and the lease agreement. After the writ of restitution was filed and while the trial court was considering the motion for attorney fees, the Hedickes moved to amend the pleadings to include enforcement of a provision of the UORRA requiring forfeiture of the entire $50,000. The trial court denied the Hedickes' motion to amend the pleadings, granted the Hedickes judgment for $20,300 of the deposit ($50,000 less the rent they owed), and decreed that both parties were to bear their own attorney fees and costs.

{6} The Gunvilles appeal the denial of an award of attorney fees and the directed verdict granted to the Hedickes on the issue of late fees. The Hedickes cross-appeal, challenging the directed verdicts granted to the Gunvilles on the issues of interest, conversion, and retaliation, and the trial court's denial of their motion to amend the pleadings. We affirm the trial court on all issues but the issue of the award of attorney fees, and we particularly affirm the trial court's view that the UORRA applies to the extent that the parties' agreement was a lease and does not apply to the extent it was a sale. We reverse on the attorney fee issue and remand to the trial court to make a determination as to the prevailing party and as to the amount of attorney fees to be awarded, consistent with this opinion.

{7} For clarity and ease of understanding, we address the Hedickes' cross-appeal first.

## HEDICKE CROSS–APPEAL

### Directed Verdicts

{8} The Hedickes argue that the trial court erred in granting a directed verdict for the Gunvilles on the issues of interest due on the $50,000 deposit, conversion, and retaliation. They also argue that the trial court abused its discretion in denying their motion to supplement the pleadings with a claim for the $50,000 deposit pursuant to Section 47–8–18 of the UORRA.

## Standard of Review

{9} A directed verdict may be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of a party or may be granted as a matter of law against a party with respect to a claim that cannot, under controlling law, be maintained without a favorable ruling on the issue. Rule 1–050(A)(1) NMRA 2002. Therefore, a directed verdict is appropriate only when there are no issues of fact to be presented to a jury. *Sunwest Bank v. Garrett,* 113 N.M. 112, 115, 823 P.2d 912, 915 (1992). All evidence, including the evidence presented by the party moving for the directed verdict, must be considered, and any conflicts in the evidence or reasonable interpretations of it are viewed in favor of the party resisting the directed verdict. *Id.* "The sufficiency of evidence presented to support a legal claim or defense is a question of law for the trial court to decide." *Id.* This Court reviews questions of law de novo. *Sowder v. Sowder,* 1999–NMCA–058, ¶ 7, 127 N.M. 114, 977 P.2d 1034.

## Directed Verdicts on the Claims for Interest and Conversion

{10} At the heart of the Hedickes' claims for interest, conversion, and punitive damages is their contention that the $50,000 is a security deposit under the UORRA and therefore the provisions of Section 47–8–18 apply. Section 47–8–18(A)(1) provides in relevant part:

> A. An owner is permitted to demand from the resident a reasonable deposit to be applied by the owner to recover damages, if any, caused to the premises by the resident during his term of residency.
>
> (1) Under the terms of an annual rental agreement, if the owner demands or receives of the resident such a deposit in an amount greater than one month's rent, the owner shall be required to pay to the resident annually an interest equal to the passbook interest permitted to savings and loan associations. . . .

However, central to the resolution of the issues on appeal was the trial court's determination of the purpose of the $50,000 deposit. The trial court's directed verdict flowed from its determination that the $50,000 was a down payment or consideration for an option to buy the land, or both, and not a true security deposit.

{11} We agree with the trial court that the UORRA applies flexibly to the portions of the parties' agreement that amount to a residential lease within the Act's terms. *See* § 47–8–2 (indicating that the purpose of the Act is to simplify, clarify, and revise the law governing the rental of dwelling units to the end that housing in New Mexico is improved). We also agree with the determination that the $50,000 was not a security deposit, and therefore there could be no interest due on it under the UORRA and no conversion as a matter of law, whether or not the UORRA applies.

{12} The Hedickes argued at trial that the lease agreement called the $50,000 a security deposit and the trial court had no authority to "construe" the contract any other way. On appeal they continue to argue that this money was a security deposit and in fact was so stipulated as a fact in the pretrial order, because the language of the pretrial order mirrored the language in the lease, which used the term "security deposit." Therefore, they continue to rely on the UORRA's provisions in their argument for interest payments, and they rely on common law in their argument for conversion. We interpret their argument to mean that the issue of whether or not the $50,000 was, in fact, a security deposit was an issue of fact that should have been submitted to a jury. The Gunvilles maintain that the judge's ruling was correct, in effect arguing that the ruling was correct as a matter of law.

{13} The evidence that the trial court considered in determining that the $50,000 was a down payment rather than a security deposit is as follows: (1) the original parties to the agreement contemplated a sale of this land, not just a lease; (2) all of the parties to the original agreement crossed out the main clause in the lease concerning the return of the security deposit and substituted a clause that included language that "[s]hould Tenant elect to purchase the property, the deposit will be applied against the purchase price";

(3) the only consideration given for the option to buy and seller's claim to the land's appreciation value over ten years was the $50,000 and/or a waiver of interest; (4) the original parties intended to sell the land and their understanding was that the $50,000 was a down payment; and (5) the size of the deposit was unusual. The only evidence that the Hedickes relied upon throughout the trial and in their appellate briefs is the words themselves, "security deposit." To the extent that the Hedickes are arguing that the words are unambiguous and the parol evidence rule should apply, we note that extrinsic or parol evidence is admissible to show the true intention of the parties even if the face of the document itself does not appear to be inconsistent. *See Twin Forks Ranch, Inc. v. Brooks*, 120 N.M. 832, 835, 907 P.2d 1013, 1016 (Ct.App.1995).

{14} In light of the quantity of evidence presented at trial contrary to the Hedickes' assertion and their lack of evidence to support their assertion, we agree with the trial court that no reasonable jury could find that $50,000 was merely a security deposit. We cannot envision any circumstance in which a landlord would ask for, or a tenant would agree to, a security deposit that was nearly 32 times greater than the monthly rent. The language of the statute bears this out. The deposit under the statute is required to be reasonable. Section 47–8–18(A). The requirement of interest if the deposit exceeds one month's rent indicates that most deposits will be limited to one month's rent or, if not, be somewhat greater, but not by a multiple of 32. If the term of the lease is less than one year, the owner may not even demand a deposit of more than one month's rent. Section 47–8–18(A)(2). The deposit is for damages, not normal wear and tear, and not prepaid rent. Section 47–8–18(A), (B), & (C).

{15} Therefore, we hold that the trial court did not err in granting directed verdicts on the claims for interest and for conversion since there was no security deposit upon which interest could accrue or conversion could be committed.

**Directed Verdict on Claim of Retaliation**

■ {16} The Hedickes argue that the trial court erred in granting a directed ver-

dict on the claim of retaliation. They claim that the Gunvilles' motion for restitution was retaliation against them for abating the rent and was therefore a violation of Section 47–8–39, which prohibits a landlord from bringing an action for possession if, in accordance with the Act, a tenant has abated rent in the previous three months. The directed verdict on the Hedickes' claim of retaliation flows from the trial court's ruling that the Hedickes were not entitled to abate rent, and therefore there could be no retaliation as a matter of law. The Hedickes argued at trial and continue to argue on appeal that they were entitled to abate all of their rent pursuant to Section 47–8–27.2(A)(2), because the Gunvilles failed to adequately maintain and repair the cesspool or septic tank and they failed to provide an adequate water supply such that the premises were rendered uninhabitable. The trial court properly ruled that pursuant to the UORRA, an owner may arrange for a resident to perform maintenance even though it is still the obligation of the owner under the Act. Section 47–8–20(E). It is undisputed that paragraphs C4 (crossed out) and E26 of the lease require the tenant to do just that. Therefore, the trial court ruled that the Hedickes were responsible for maintaining the cesspool or septic tank and the water tank. Furthermore, the trial court ruled that even if there were questions of fact about the maintenance of the cesspool or septic system and the water supply, since it was uncontested that there were people residing on the property continuously until the time of the fire, as a matter of law, the Hedickes were not entitled to abate the rent.

■ {17} The Hedickes argue that the issue of abatement should have been given to a jury to decide the extent of the Gunvilles' duty to repair and the severity of the waste and water problems, and they continue to argue these same facts in their cross-appeal brief. We conclude, as the trial court did, that the threshold question of the propriety of abatement is one of statutory interpretation, which is a question of law. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

{18} The UORRA states:

If there is a violation of [Section 47–8–20 "Obligations of Owner"], the resident shall give written notice to the owner of the conditions needing repair. If the owner does not remedy the conditions, the resident is entitled to abate rent as set forth below:

. . .

(2) one hundred percent of the rent for each day from the date the resident notified the owner of the conditions needing repair until the date the breach is cured *if the dwelling is uninhabitable and the resident does not inhabit the dwelling unit as a result of the condition.*

Section 47–8–27.2(A) (emphasis added). As the trial court stated, "uninhabitable means uninhabitable." The Hedickes do not assert that this term is ambiguous, nor do we find any ambiguity in this provision. As it is uncontested that tenants were living on the premises continuously until the fire, the premises were not uninhabitable for any of the 17 months the Hedickes had not paid rent. Therefore, we determine, as a matter of law, that the Hedickes were not permitted to abate their rent pursuant to the UORRA. We hold, accordingly, that the trial court did not err in granting a directed verdict on the claim of retaliation because there is no issue of retaliation in response to rent abatement if there is no right to abate.

*Refusal to Allow Supplementation of the Pleadings*

{19} After the trial ended and while the trial court was considering the issue of awarding attorney fees, the Hedickes moved the trial court to supplement the pleadings to include a claim pursuant to Section 47–8–18(D) of the UORRA, which requires a landlord to provide a written statement of deductions from the deposit. Failure to provide such a statement results in forfeiture of the entire deposit. Section 47–8–18(D)(1). The Hedickes argue that after the writ of restitution was entered and the Gunvilles took possession of the property, the Gunvilles were required to provide them with an itemized written list of deductions from the security deposit and that failure to do so results in a forfeiture of the entire $50,000. The trial court denied the motion, and the Hedickes now argue that the trial court erred in refusing to allow supplementation of the pleadings. *See* Rule 1–015 NMRA 2002.

**Standard of Review**

{20} Amendments to the pleadings are within the trial court's discretion and are reviewed by this Court for abuse of discretion. *Schmitz v. Smentowski,* 109 N.M. 386, 390, 785 P.2d 726, 730 (1990). Though leave to amend the pleadings should be freely given "when justice so requires," *id.* (internal quotation marks and citation omitted), the theory of pleadings is to give the parties fair notice of the claims against them and the grounds upon which they are based, *id.* at 389, 785 P.2d at 729. "Where a motion to amend comes late in the proceedings and seeks to materially change Plaintiff's theories of recovery, the court may deny such motion." *Dominguez v. Dairyland Ins. Co.,* 1997–NMCA–065, ¶ 17, 123 N.M. 448, 942 P.2d 191.

**Merits**

{21} As noted above, the trial court had already ruled that the $50,000 was not a security deposit as envisioned by the UORRA, and we have upheld that ruling. Furthermore, the trial court had informed the parties that it would order $20,300 of the deposit to be returned to the Hedickes, but the trial court was still considering the issue of the Gunvilles' request for attorney fees, which could additionally be subtracted from the deposit if awarded. Finally, this amendment appears to be a new theory on the claim to the $50,000 that arose after the conclusion of the trial and was argued in a motion and on appeal under a provision of the statute that was not addressed at trial and which did not give the Gunvilles fair notice to defend against it. On these facts, we cannot say that the trial court abused its discretion when it denied the motion to amend.

**GUNVILLE APPEAL**

*Attorney Fees*

{22} The Gunvilles argue that they are entitled to reasonable attorney fees pursuant

to the UORRA and pursuant to the residential lease because they are the prevailing party in this suit. They argue that they successfully defended all three counts brought against them by the Hedickes, and they prevailed on their counterclaim for breach of contract and their motion for restitution. The Hedickes argue that they are the prevailing party regardless of any other issue in the case because the trial court awarded them a judgment of $20,300.

### Standard of Review

{23} The trial court has broad discretion when awarding attorney fees and will not be reversed unless there is an abuse of discretion. *Miller v. Johnson,* 1998–NMCA–059, ¶ 34, 125 N.M. 175, 958 P.2d 745. The trial court may abuse its discretion if it does not award attorney fees contrary to a contractual provision entitling the prevailing party to reasonable attorney fees. *See Dennison v. Marlowe,* 108 N.M. 524, 526–27, 775 P.2d 726, 728–29 (1989).

{24} In interpreting the meaning of a statute, courts are to give the words used their ordinary meaning. *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599. This Court refrains from further interpretation when the language is clear and unambiguous. *Garcia v. Thong,* 119 N.M. 704, 706, 895 P.2d 226, 228 (1995). "When discerning the ... meaning ... of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Housing Corp. v. Ryder Truck Rental, Inc.,* 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987). Contract and statutory interpretations are issues of law which this Court reviews de novo. *Morgan Keegan Mortgage Co.,* 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066; *Kirkpatrick v. Introspect Healthcare Corp.,* 114 N.M. 706, 711, 845 P.2d 800, 805 (1992).

### Merits

{25} The UORRA mandates the award of attorney fees to the prevailing party:

If a suit is brought by *any* party to the rental agreement to enforce the terms and conditions of the rental agreement or to enforce any provisions of the Uniform Owner–Resident Relations Act [47–8–1 to 47–8–51 NMSA 1978], the prevailing party *shall* be entitled to reasonable attorneys' fees and court costs to be assessed by the court.

Section 47–8–48(A) (emphasis added). The residential lease agreement contains a similar provision stating, "[i]f either party retains an attorney to enforce this lease, the prevailing party is entitled to recover reasonable attorney's fees." At issue, then, is the meaning of the term "prevailing party" in the UORRA and in the contract. We note at the outset that the UORRA expressly states that the principles of law and equity, including the capacity to contract, supplement the statute unless the statute displaces those principles. Section 47–8–4. Therefore, the trial court rightfully considered both the statute and the lease in making its determinations on this issue, as shall we.

{26} New Mexico has not had occasion to interpret Section 47–8–48 of the UORRA, but it has defined "prevailing party" in the context of assessing court costs. *See Dunleavy v. Miller,* 116 N.M. 353, 360, 862 P.2d 1212, 1219 (1993) ("[T]he prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment."); *see also Marchman v. NCNB Texas Nat'l Bank,* 120 N.M. 74, 95, 898 P.2d 709, 730 (1995) (considering the entire action and finding no prevailing party because the trial court did not reach the merits of the underlying claims that were dismissed for forum non conveniens, but also stating that a defendant for whom a summary judgment is granted is the prevailing party). Prevailing party is also defined as "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." Black's Law Dictionary 1188 (6th ed.1990). This definition suggests, as *Marchman* does, that at the end of the entire action, the prevailing party is the party who wins on the

merits or on the main issue of the case. *See Marchman*, 120 N.M. at 95, 898 P.2d at 730.

{27} With this reasoning in mind, using the plain meaning of the words of the statute and the plain meaning of the words of the contract, we look to the history of this case to determine whether there is a prevailing party. The Hedickes brought suit against the Gunvilles to enforce the provisions of the UORRA for interest on the $50,000 deposit, for conversion of the $50,000, and for punitive damages. Because the trial court ruled that the $50,000 was not a security deposit under the UORRA, no interest was due and there was no conversion, and therefore no punitive damages could be awarded. Thus, the Gunvilles successfully avoided an adverse judgment on every claim, making them the prevailing party on the Hedickes' claims under the reasoning of *Dunleavy* and *Marchman*. Under the terms of the statute, the Gunvilles are entitled to "reasonable attorneys' fees and court costs to be assessed by the court." Section 47–8–48.

{28} In their answer to the Hedickes' complaint, the Gunvilles asserted compulsory counterclaims against the Hedickes, alleging breach of contract for failure to pay rent and failure to pay late fees, in effect bringing suit to enforce the terms of the lease. On the claim for breach of contract for failure to pay rent, the trial court found for the Gunvilles and awarded them the unpaid rent. On the claim for failure to pay late fees, the trial court found for the Hedickes. Thus, on the counterclaims, the Gunvilles were the prevailing party on one claim and the Hedickes were the prevailing party on one claim. Again, under the terms of the statute or the lease, parties are entitled to reasonable attorney fees to the extent that they prevailed. Of course, if each party prevails on one claim and loses on one claim, the trial court could and may conclude that neither is ultimately a prevailing party on those claims. *See, e.g., New Mexico Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 33, 127 N.M. 654, 986 P.2d 450 (concluding that neither party prevailed on a counterclaim because the trial court ruled in favor of each party on one issue; thus neither party was entitled to an award of costs).

{29} Looking at the entire action in this case, the Gunvilles won on the merits of four of the five claims at issue. Though the Hedickes were awarded the return of some of the deposit, and the trial court called it a judgment, this was not a judgment on any of the three claims they brought against the Gunvilles, nor was it a judgment on either of the counterclaims. Though most of the trial court's rulings hinged on whether or not the $50,000 was a true security deposit or a down payment for purchase, the Hedickes' claims were for interest due, conversion, and punitive damages, all of which they lost. The Gunvilles' counterclaim was for breach of contract, and the trial court found that the Hedickes did breach the contract. Indeed, as the trial court noted, the Gunvilles were not contending that the Hedickes were not entitled to some of the $50,000. Rather, the exact amount to be returned was the real issue in the Gunvilles' counterclaim for breach of contract.

{30} The trial court did not award costs and attorney fees to either party, presumably because it determined that neither party prevailed. In light of the above analysis, it is difficult for us to conclude that neither party prevailed or that each prevailed in equal measure. The Hedickes came away from the proceedings with nothing that they asked for in their complaint, and ended up with less than half of their deposit due to their own breach of the lease agreement. They successfully defended against one counterclaim. On the other hand, the Gunvilles successfully defended against all of the Hedickes' claims, and won on their breach of contract counterclaim. The Gunvilles also prevailed on their motion for restitution. While a judgment of $20,300 is a great deal of money, it is not an indication, under the facts of this case, that the Hedickes prevailed in anything but a minimal way, i.e., they did not lose their entire deposit. We hold that the trial court abused its discretion when it failed to determine, pursuant to the UORRA and the lease, who prevailed in this case, thereby failing to award any attorney fees and costs to either party. We wish to emphasize that assessing reasonable attorney fees need not be mechanistic or formulaic,

but is governed by, and should be apportioned according to, the facts and circumstances of the case and the extent to which the parties, in fact, prevailed. Under this formulation, the Gunvilles could be awarded all of their fees, less the fees required to be paid to the Hedickes for their prevailing on the late fee issue. Alternatively, the trial court could call the counterclaims a draw and award the Gunvilles their fees for successfully defending the claims in the complaint. We leave the exact apportionment to the sound discretion of the trial court on remand.

*Late Fees*

 {31} The Gunvilles argue that the trial court erred in granting the Hedickes' motion for a directed verdict on the Gunvilles' counterclaim for late fees pursuant to Section 47–8–15(D). In making its ruling, the trial court found that, pursuant to Section 47–8–15(D), the Gunvilles failed to provide notice of late fees, which the plain language of the statute mandates. There is no dispute as to the facts of this issue, and the Gunvilles concede that they did not provide notice to the Hedickes for any month the Hedickes failed to pay rent. The Gunvilles ask this Court to ignore the plain language of the statute, which we decline to do.

{32} The UORRA states:
If the rental agreement provides for the charging of a late fee, and if the resident does not pay rent in accordance with the rental agreement, the owner may charge the resident a late fee in an amount not to exceed ten percent of the total rent payment for each rental period that the resident is in default. *To assess a late fee, the owner shall provide notice of the late fee charged no later than the last day of the next rental period immediately following the period in which the default occured.*
Section 47–8–15(D) (emphasis added). The Gunvilles ask us to interpret the first sentence as conveying a substantive right of a landlord to assess late fees and the second sentence as asserting a procedural requirement that can be interpreted to mean notice of any kind. They argue that their counterclaim filed in January 1999 was sufficient to put the Hedickes on notice that they intend-

ed to collect late fees. In support of their argument, they assert that the UORRA defines notice in Section 47–8–13(A)(1), stating that "[a] person has notice of a fact if … he has actual knowledge of it." The Gunvilles' reliance on this definition is taken out of context of the entire section. *See High Ridge Hinkle*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("[W]here several sections of a statute are involved, they must be read together so that all parts are given effect."). Moreover, this argument does not address the very specific time frame for giving notice that the statute mandates. We need not decide what method the statute anticipates for notice of late fees because the statute plainly calls for notice to be given "no later than the last day of the next rental period immediately following the period in which the default occurred." Section 47–8–15(D). There is no dispute that the Gunvilles failed to give notice of late fees in any month in which they now claim they intended to collect late fees. The trial court did not err in its ruling that the Gunvilles were not entitled to collect late fees because they did not comply with the UORRA. Therefore, we hold that the trial court did not err in granting a directed verdict in favor of the Hedickes on the counterclaim for late fees.

**CONCLUSION**

{33} We reverse on the issue of attorney fees and costs and remand to the trial court to determine the prevailing party in this case and to apportion an award of attorney fees and costs commensurate with that determination. We affirm the trial court in all other respects.

{34} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and RODERICK T. KENNEDY, Judge.