# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMCA-072**

**Filing Date: August 27, 2019**

**No. A-1-CA-36212**

**GIANT CAB, INCORPORATED,**

 Plaintiff-Appellee,

v.

**CT TOWING, INC.,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Released for Publication December 17, 2019.

Whitener Law Firm, P.A.
Thomas M. Allison
Albuquerque, NM

for Appellee

Western Agriculture, Resource
and Business Advocates, LLP
A. Blair Dunn
Albuquerque, NM

Law Office of Andrew G. Thornton
Andrew G. Thornton
Albuquerque, NM

for Appellant

## OPINION

**ATTREP, Judge.**

**{1}** Defendant CT Towing, Inc. appeals a district court judgment awarding Plaintiff Giant Cab Incorporated compensatory damages and costs for CT Towing's failure to

allow Giant Cab to remove certain attached equipment from an accident-damaged taxicab CT Towing had lawfully towed and stored on its lot. CT Towing contends the district court erred in concluding (1) the items were not subject to the lien it lawfully held on the taxicab under NMSA 1978, Section 48-3-19 (1967), and (2) Giant Cab satisfactorily established its ownership of the items as required by 18.3.12.24(B)(1)(c) NMAC (2/13/2015). We conclude the district court correctly interpreted the relevant statutory and regulatory provisions and substantial evidence supported the district court's finding that Giant Cab provided proof of ownership. We affirm.

**BACKGROUND**

**{2}**　　We draw the facts from the testimony presented at the bench trial. At the direction of law enforcement, CT Towing towed a damaged taxicab from the scene of an accident to its storage lot. Robert Torch, the owner of Giant Cab, went to the storage lot the following morning to check on the condition of the vehicle and to retrieve certain items. Torch presented Martha Stanke, co-owner of CT Towing, his identification and asked to examine the vehicle and to retrieve the registration and other personal items. Torch was permitted onto the lot, where he retrieved the registration and observed that the vehicle was likely inoperable. He returned to the front office and showed Stanke the registration that had been stored in the vehicle. Stanke presented him with an invoice for the towing charges, which he signed. Based on standard CT Towing practice, his signature on the invoice indicated he had shown proof of ownership for the cab.

**{3}**　　Torch then asked Stanke for permission to return to the vehicle to remove the taxicab's fare meter, the dome light painted with his company name and telephone number, and the relay, which operated the dome light, as he could still make use of those items. He explained to Stanke that removal would be straightforward, need not damage the vehicle, and could be accomplished in approximately fifteen minutes. Torch had installed the fare meter and the dome light himself in customizing and painting the cab after purchasing it, as was his general practice.

**{4}**　　Stanke denied Torch's request, citing insurance concerns.[1] She later testified that the registration Torch retrieved from the vehicle appeared to be for a different vehicle and she had asked him to return with the correct registration. Regardless, instead of granting Torch's request to return to the vehicle, Stanke offered him an alternative—he could pay CT Towing's towing and storage fee, they would tow the vehicle off the lot, and he could retake possession of the vehicle and the items he sought.

**{5}**　　That alternative was unacceptable to Torch and he left the lot. A few days later, Torch filed an action in district court, alleging claims of conversion and prima facie tort based on CT Towing's refusal to let him remove the items. The district court later held a one-day bench trial. Based on the evidence presented, the district court concluded Torch should have been allowed to remove the dome light, fare meter, and relay because the items constituted personal property under 18.3.12.24(B)(1)(c) NMAC

---

[1]CT Towing has not advanced on appeal any insurance-related justification for refusing Torch's request.

(2/13/2015), which the parties agreed was exempt from the tow company lien under Section 48-3-19. The court awarded Torch compensatory damages and costs. CT Towing appealed.

## DISCUSSION

### I. Standard of Review

**{6}** We review the district court's findings of fact for substantial evidence. *See Williams v. Mann*, 2017-NMCA-012, ¶ 25, 388 P.3d 295. We review de novo the district court's application of law to the facts. *See TPL, Inc. v. N.M. Taxation & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447, 64 P.3d 474. We also review the district court's interpretation of the statutory and regulatory language de novo. *See Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶¶ 22, 24, 147 N.M. 583, 227 P.3d 73.

**{7}** We aim to give effect to the Legislature's intent in construing statutory provisions. *See Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350. We are aided by classic canons of statutory construction in discerning intent, and we look first to plain meaning. *See Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. We read provisions in their entirety and construe them in relation with all others so as to produce a harmonious whole. *See Key*, 1996-NMSC-038, ¶ 14. "In interpreting sections of the Administrative Code, we apply the same rules as used in statutory interpretation." *All. Health of Santa Teresa, Inc. v. Nat'l Presto Indus.*, 2007-NMCA-157, ¶ 18, 143 N.M. 133, 173 P.3d 55.

### II. The District Court Did Not Err in Concluding CT Towing's Lien on the Taxicab Did Not Extend to the Identified Items

**{8}** In its interpretation of the relevant statutory and regulatory language, the district court determined that the taxi equipment was not a "fixture." CT Towing contends the district court erred in interpreting the word "fixture" and as a result erred in concluding CT Towing's lien on the vehicle did not extend to the fare meter, dome lamp, and relay.

**{9}** Neither the statutory language nor the regulatory language identified by the parties, however, makes any reference to fixtures. Section 48-3-19 grants a lien on "automobiles" towed or stored, at the direction of a person lawfully in possession, for the reasonable value of those services. NMSA 1978, Section 48-3-21 (1965) establishes that an "automobile" for purposes of Section 48-3-19 includes "motor vehicles of all classes and kinds[,]" and that a "motor vehicle" is any "self-propelled device in, upon or by which, any person or property is, or may be, transported." Section 48-3-21. The pertinent regulation sets forth procedures by which automobile owners may retake possession of automobiles subject to towing and storage liens. The regulation establishes that an owner may obtain possession of a vehicle not held for further law enforcement investigation by paying certain reasonable charges and providing proof of ownership. *See* 18.3.12.24(B)(2) NMAC (2/13/2015). Even in the absence of payment to retake possession, the regulation also permits an owner or agent, without charge, to

"remove personal property from the motor vehicle if he or she presents proof of ownership." 18.3.12.24(B)(1)(c) NMAC (2/13/2015).

**{10}**     The statutory provision at issue here, Section 48-3-19, makes reference only to "automobiles" and does not tell us explicitly whether Torch's equipment might have merged with the automobile. *See id.* The statutory definition of "motor vehicle," incorporated in the statutory definition of automobile, provides no more guidance. *See* § 48-3-21. Other related statutory provisions shed more light on the question.

**{11}**     Section 48-3-19 sets forth just one of many legislatively created liens on personal property—Article 3 of Chapter 48 houses a variety of others, including mechanics' liens, landlord's liens, and common carriers' liens. *See, e.g.*, NMSA 1978, §§ 48-3-1 (1977), 48-3-5 (1997), 48-3-8 (1923). Some of these other liens, under appropriate circumstances, may apply to vehicles much like the tow company's lien does here. *See* §§ 48-3-1, -5, -8. But notably, in establishing the scope of these other liens, our Legislature has seen fit to specify that the liens may also extend to "parts" of these vehicles, depending on the nature of the services provided. *See, e.g.*, § 48-3-1(A) (specifying mechanics "who repair[] any motor vehicle or furnish[] parts therefor . . . shall have a lien upon such motor vehicle or any part or parts thereof"); NMSA 1978, § 48-3-29(A) (1985) (specifying aircraft maintenance facility that "stores, maintains or repairs any aircraft accessories or furnishes materials for an aircraft . . . shall have a lien upon the aircraft or any part thereof"). No such specification appears in Section 48-3-19. The omission signals the Legislature's intent that, given the more limited nature of the services tow companies provide, the liens granted to tow companies are less expansive than those applicable to mechanics or common carriers and do not extend to equipment like that at issue here. *See, e.g.*, *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 25, 148 N.M. 426, 237 P.3d 728 ("[I]f a statute on a particular subject omits a particular provision, inclusion of that provision in another related statute indicates an intent that the provision is not applicable to the statute from which it was omitted." (alteration, internal quotation marks, and citation omitted)). Had the Legislature intended the tow company's lien to extend not just vehicles but vehicle parts, it could have demonstrated the intent by including more specific language. *See City of Eunice v. N.M. Taxation & Revenue Dep't*, 2014-NMCA-085, ¶ 19, 331 P.3d 986 ("[The Legislature] could readily have demonstrated such an intent by including language to that effect."). But no such language is included, and we decline to read it into the statute.

**{12}**     Mindful of the principle that a regulation may not impose requirements inconsistent with those established by statute, we recognize the regulation's potential distinction between "personal property" and "vehicle" may be confusing given that the vehicle itself is personal property and the tow company's lien clearly extends to the vehicle. *See Albuquerque Cab Co. v. N.M. Pub. Regulation Comm'n*, 2014-NMSC-004, ¶ 14, 317 P.3d 837 (explaining agency "may not by regulation impose requirements that are greater than, and inconsistent with, those set forth by" statute); *Hubbard v. Albuquerque Truck Ctr., Ltd.*, 1998-NMCA-058, ¶ 17, 125 N.M. 153, 958 P.2d 111 (noting vehicle damage is personal property damage). But the regulation's use of the

word "remove" helps clear up any confusion and aids our examination of the scope of the lien here. To "remove" something is commonly defined as "to move" it "by lifting, pushing aside, or taking away or off." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/remove (last visited on Aug. 13, 2019). That definition (or concept) contemplates what Torch proposed to do here, which was to retake possession of his taxi equipment after detaching it from the vehicle without causing damage to the vehicle itself or diminishing its value. Use of "remove" thus suggests the regulation contemplates, with no apparent inconsistency with the statutory language, that owners may retake possession of a variety of items that do not make up the vehicle as "personal property," including attached equipment like Torch's, even without retaking possession of the vehicle itself.

**{13}** New Mexico's longstanding law of real property and fixtures, though not perfectly analogous given the personal property at issue here, bolsters the conclusion CT Towing's lien did not extend to the taxi equipment. Our appellate courts have often observed that statutory provisions are enacted against a background of common law principles, and unless "clearly abrogated," we presume those principles to be consistent with the new legislation. *Sims v. Sims*, 1996-NMSC-078, ¶ 24, 122 N.M. 618, 930 P.2d 153. In applying common law principles to determine whether an article or item is a "fixture" to be treated as part of a piece of real property, our courts generally look to considerations of the intent of the party making the installation, the article's adaptation to the use of the property, and the article's "annexation" to the property. *Boone v. Smith*, 1968-NMSC-172, ¶ 5, 79 N.M. 614, 447 P.2d 23. Intent is generally "the chief test and must affirmatively and plainly appear." *Id.* ¶ 8; *see also Sw. Pub. Serv. Co. v. Chaves Cty.*, 1973-NMSC-064, ¶ 15, 85 N.M. 313, 512 P.2d 73 ("Thus our inquiry, though not disregarding annexation or adaptation, must center upon [the installing party's] intentions in installing and maintaining the components of steam production in their present location.").

**{14}** Application of that principle here is instructive because there was no evidence that Torch intended, or that any other party understood, that his equipment would merge with the vehicle for purposes of the lien or otherwise. Torch testified that the equipment was freely transferrable, and that he had in fact recently transferred the same sort of equipment from another wrecked vehicle to a new one. *See Sw. Pub. Serv. Co.*, 1973-NMSC-064, ¶ 30 ("The equipment was readily portable and was frequently moved about for one reason or another."). The parties agreed the equipment was in fact removable without any diminution in value of the vehicle. *Cf. Mitchell v. Lovato*, 1982-NMSC-018, ¶ 21, 97 N.M. 425, 640 P.2d 925 (affirming the district court's conclusion that items had merged with realty and noting "defacement and injury to certain floors and walls, caused by removal of these items"). There was, moreover, no evidence CT Towing relied in any way on any indication of permanency, and no evidence of any "objective manifestations" indicating permanency. *See Kerman v. Swafford*, 1984-NMCA-030, ¶ 18, 101 N.M. 241, 680 P.2d 622. Examination of our real property principles thus suggests Torch's equipment was distinct from the vehicle and informs our interpretation of the relevant statutory and regulatory language. *See Sims*, 1996-NMSC-078, ¶ 24 (observing statutory provisions are enacted against background of common law and where "no

aspect of the background of law is clearly abrogated, it is presumed to be consistent with . . . new legislation").

**{15}** Application of the law of trade fixtures, though likewise imperfectly analogous, points toward the same conclusion. A "trade fixture" is generally defined as "[r]emovable personal property that a tenant attaches to leased land for business purposes[.]" *Trade Fixture*, *Black's Law Dictionary* (10th ed. 2014). New Mexico courts have long recognized the existence of trade fixtures. *See Porter Lumber Co. v. Wade*, 1934-NMSC-042, ¶ 13, 38 N.M. 333, 32 P.2d 819 (noting general rule that tenant is permitted to remove trade fixtures at expiration of tenancy). In *Wade*, our Supreme Court examined whether bowling alleys constructed on a premises had become part of the underlying realty. *Id.* ¶ 12. *Wade* concluded they had not, explaining the bowling alleys were trade fixtures because they "did not constitute an integral part of the realty and [were] to be used for a specific trade purpose only." *Id.* These trade fixtures principles, much like the more general property principles noted above, also inform our statutory and regulatory interpretation in the absence of any legislative signal of abrogation. *See Sims*, 1996-NMSC-078, ¶ 24. Examination of these principles suggests again Torch's equipment had not merged with the vehicle itself, because the parties appeared to agree the equipment was not an integral part of the vehicle, and it was undisputed that the equipment was to be used specifically for the cab company. *See id.*

**{16}** Given the statutory and regulatory language identified, the omission of more specific language the Legislature used in other statutory provisions, the guidance we find in other strands of property law, and the record the parties made, we cannot conclude the district erred in determining the lien imposed by Section 48-3-19 did not extend to the equipment Torch sought to remove here.

### III. The District Court's Determination That Torch Presented Adequate Proof of Ownership Was Supported by Substantial Evidence

**{17}** CT Towing adds a contention that 18.3.12.24(B)(1)(c) NMAC (2/13/2015) required Torch to show proof of ownership of the vehicle before he was permitted to remove his equipment, and the district court erred in determining he had met that requirement. In reviewing this determination for substantial evidence, we ask whether the record featured relevant evidence a reasonable mind could accept as adequate to support the finding. *See Clovis Nat'l Bank v. Harmon*, 1984-NMSC-119, ¶ 7, 102 N.M. 166, 692 P.2d 1315. "[W]e resolve all disputed facts in favor of the [prevailing] party, indulge all reasonable inferences in support of [the judgment], and disregard all evidence and inferences to the contrary." *Id.*

**{18}** The applicable regulation defines "proof of ownership" for purposes of the regulation here as "a certificate of title, evidence of current registration of a motor vehicle or other legal documentation of ownership[.]" 18.3.12.7(D) NMAC (2/13/2015). Given that standard, various evidence supported a determination that Torch established his ownership. Torch showed CT Towing his driver's license and "additional information" upon his arrival. He recalled he had been permitted on arrival to go retrieve personal

items, including a first aid kit, from the cab. He added that he thought he had at some point presented "[t]he ownership and registration and the title." Regardless which specific documents he had presented, he recalled showing Stanke documentation establishing he was the owner. Another co-owner of CT Towing testified that Torch had presented a registration to a Giant Cab vehicle, though perhaps not the one at issue here, along with a driver's license, and that Torch eventually signed CT Towing's tow invoice, which typically indicated proof of ownership had been shown. Moreover, Stanke recalled that CT Towing has a practice of requiring proof of ownership and identification before allowing an owner to access a vehicle, and she recalled, in her deposition, requiring proof of ownership from Torch before she allowed him to do an initial inspection of the vehicle.

**{19}**    That evidence was sufficient to allow a reasonable fact-finder to conclude Torch had shown proof of ownership as required by 18.3.12.24 NMAC (2/13/2015), and thus we conclude the district court did not err in determining Torch met the prerequisites for removal of his equipment.

**CONCLUSION**

**{20}**    We affirm the district court's judgment.

**{21}    IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**KRISTINA BOGARDUS, Judge**