The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>March 13, 2023</u>

**No. A-1-CA-39687**

**SCOTT ROSER and ROBERTA ROSER,**

  Plaintiffs-Appellees,

v.

**JESSICA L. HUFSTEDLER,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**John P. Sugg, District Court Judge**

Scott Roser
Roberta Roser
Ruidoso, NM

Pro Se Appellees

New Mexico Legal Aid, Inc.
Lucilla C.G. Clarke
Roswell, NM

for Appellant

**OPINION**

**BOGARDUS, Judge.**

{1} Jessica Hufstedler (Resident) appeals the district court's order denying her counterclaim for unlawful diminution of services based on her landlords' act of directing a utility provider to shut off Resident's water services due to Resident's unpaid water bill. Resident argues the district court erred in denying her counterclaim, contending that the district court misinterpreted NMSA 1978, Section 47-8-36(A)(4) (1995) of the Uniform Owner-Resident Relations Act (UORRA). We agree with Resident and reverse.

**BACKGROUND**

{2} This case arises from an action to evict Resident from property owned by Scott and Roberta Roser (Owners). Pursuant to NMSA 1978, Section 47-8-42 (1975) of UORRA, Owners brought a petition for restitution of possession of the premises against Resident based on unpaid rent and property damage, which Resident answered. On March 9, 2021, the magistrate court entered a judgment for restitution in favor of Owners and issued a corresponding writ of restitution. The writ ordered the sheriff to remove Resident "on or after . . . March 16, 2021," but "no later than seven days following entry of judgment." On March 15, 2021, Resident filed a notice of appeal of the magistrate court's judgment in the district court.

**{3}** It is undisputed that, as of Friday, March 19, 2021, the writ of restitution had not been executed, and Resident remained in possession of the premises. As of that date, Resident's utility bill from the Village of Ruidoso (the Village) showed that she owed the Village $738.39 for water services, which included a past due amount of $612.38 for several months of unpaid charges. As owners of the property, Owners were ultimately responsible for paying this water bill.

**{4}** Aware of Resident's outstanding balance, Owners called the Village on March 19, 2021, and directed the Village to shut off water services for nonpayment. The Village shut off the water that same day. After 4:00 p.m. on March 19, 2021, Resident paid the Village the past due amount. By the time Owners learned that Resident had paid the outstanding balance, however, the Village water department had closed for the weekend. The Village restored water service the following Monday, March 22, 2021.

**{5}** With the district court's permission, Resident filed an amended answer, adding a counterclaim for unlawful diminution of services pursuant to Section 47-8-36(A)(4), and seeking abatement of rent for the days Resident was without water service. After a bench trial, the district court denied Resident's claim for unlawful diminution of services. Resident appeals, and Owner declined to participate in the appeal.

2

**DISCUSSION**

{6}      Resident argues that the district court erred in denying her counterclaim for unlawful diminution of services because the court misinterpreted Section 47-8-36(A)(4). Whether Section 47-8-36(A)(4) permitted Owner to direct the Village to shut off Resident's water services involves statutory construction and the application of the statute to undisputed facts, which is a question of law that we review de novo. *See Hedicke v. Gunville*, 2003-NMCA-032, ¶ 24, 133 N.M. 335, 62 P.3d 1217 (stating that statutory interpretation is an issue of law which this Court reviews de novo); *Giant Cab, Inc. v. CT Towing, Inc.*, 2019-NMCA-072, ¶ 6, 453 P.3d 466 ("We review de novo the district court's application of law to the facts."). Resident argues the district court misinterpreted two provisions of Section 47-8-36(A)(4): (1) the meaning of "court order" and (2) language addressing an owner's obligations regarding a resident's unpaid utility charges. We review each argument in turn.[1]

---

[1]The parties have presented no argument addressing the intent required under Section 47-8-36(A)(4), or whether Owners directed the Village to shut off water services with the required intent. The district court likewise made no determination in this regard. We therefore need not decide and express no opinion on this issue. *See Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 58, 492 P.3d 586 ("As a general rule, appellate courts rely on adversarial briefing to decide legal issues and avoid reaching out to construct legal arguments that the parties, intentionally or otherwise, have not presented. . . . With rare exceptions, this Court . . . should decide the issues presented by the parties, as the parties present them." (internal quotation marks and citations omitted)).

3

**I. The District Court Erred in Concluding That a "Court Order" Permitted Owners to End Water Services**

{7} Section 47-8-36(A) states that "an owner or any person acting on behalf of the owner shall not knowingly exclude the resident, remove, threaten or attempt to remove or dispossess a resident from the dwelling unit *without a court order*" by taking any one of a series of actions, including by "interfering with services or normal and necessary utilities to the unit . . . including . . . hot or cold water." Section 47-8-36(A)(4) (emphasis added). If the owner violates Section 47-8-36(A), the resident may be entitled to certain remedies for unlawful diminution of services. *See* § 47-8-36(C). The district court denied Resident's counterclaim for unlawful diminution of services based on its conclusion that, on the date, Owners directed the Village to shut off Resident's water, there was a "court order" permitting Owners to end water service, pursuant to Section 47-8-36(A)(4). Specifically, the district court determined that, at the time Owners directed the Village to end water services, the magistrate court had already entered a judgment for restitution of the premises in favor of Owners and issued a writ of restitution directing the sheriff to restore possession to Owners, and that this judgment and writ constituted a "court order" under Section 47-8-36(A). *See* NMSA 1978, § 47-8-46(A) (1995) (providing that, "[u]pon petition for restitution filed by the owner if judgment is rendered against the defendant for restitution of the premises, the court shall . . ., at the request of the

4

plaintiff or [their]attorney, issue a writ of restitution directing the sheriff to restore possession of the premises to the plaintiff").

{8} Resident argues that the district court misinterpreted "court order," contending that a judgment for restitution for which a writ of restitution has been issued does not constitute a "court order." Resident points out that no court order authorized Owners to shut off Resident's water, that Resident remained in the dwelling unit with Owners' knowledge, and that the sheriff never executed the writ of restitution. The narrow question before us, then, is whether a judgment for restitution for which a writ of restitution has been issued but not executed constitutes a "court order" as used in Section 47-8-36(A)(4). We conclude it does not.

{9} We begin with the statute's plain language and observe that the Legislature used the phrase "court order" rather than "judgment for restitution" or "writ of restitution." *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 ("When construing statutes, our guiding principle is to determine and give effect to legislative intent," and "[w]e use the plain language of the statute as the primary indicator of legislative intent." (alterations, internal quotation marks, and citations omitted)). "The Legislature knows how to include language in a statute if it so desires," *State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 (alteration, internal quotation marks, and citation omitted), and could have included in Section 47-8-36(A) the phrase "judgment for restitution," "writ of restitution," or both—

instead of "court order"—as it did in several other UORRA provisions. *See* § 47-8-46 (referring to entry of a "judgment . . . for restitution of the premises" and "writ of restitution"); NMSA 1978, § 47-8-47(A) (1999) (referring to "the judgment" and "writ of restitution"); NMSA 1978, § 47-8-33(E)(2) (1999) (referring to "a writ of restitution" and "entry of judgment"). Accordingly, Section 47-8-36(A)'s plain language indicates that the Legislature did not intend that a judgment for restitution for which a writ of restitution has been issued to constitute a "court order." *See Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2013-NMSC-013, ¶ 36, 484 P.3d 954 ("We have previously said that when the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional." (internal quotation marks and citation omitted)).

{10}     This interpretation is bolstered by the Legislature's use of the phrase "court order" in another section of UORRA, where the phrase could not reasonably refer to a judgment for restitution or writ of restitution. *See N.M. Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 ("We consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." (alterations, internal quotation marks, and citation omitted)). That section, NMSA 1978, Section 47-8-24 (1995), generally restricts an owner's right to access a dwelling unit to certain

6

situations, *see* § 47-8-24(A), (B), but includes a "court order" exception. *See* § 47-8-24(D) (providing, in relevant part, that "[t]he owner has no other right of access except by *court order*" (emphasis added)). That is, Section 47-8-24(D)'s use of "court order" apparently contemplates an order, which authorizes *the owner* to access a dwelling unit without the resident's consent, an act generally prohibited by that statute.

{11}     Section 47-8-36(A) has a similar structure and uses "court order" in a similar way to Section 47-8-24. Like Section 47-8-24, Section 47-8-36(A) restricts an owner's rights to interfere with a resident's possession of the dwelling unit. Section 47-8-36(A) prohibits an owner from taking certain actions on their own to recover possession of a dwelling unit from a resident who refuses to surrender or abandon the unit. *See id.* Specifically, Section 47-8-36(A) provides, "Except in case of abandonment, surrender or as otherwise permitted in [UORRA], an owner or any person acting on behalf of the owner shall not knowingly *exclude the resident, remove, threaten or attempt to remove or dispossess a resident from the dwelling unit*" by committing certain acts, such as changing the locks or as in this case, interfering with necessary utilities. *Id.* (emphases added). And like Section 47-8-24(D), Section 47-8-36(A) provides for an exception to the statute's general restriction on owner interference with a resident's possession of the unit where there is a "court order." *See* § 47-8-36(A) (providing that "an owner . . . shall not

7

knowingly exclude the resident, remove, threaten or attempt to remove or dispossess a resident from the dwelling unit *without a court order*" (emphasis added)). Section 47-8-36(A)'s use of "court order" thus contemplates an order which authorizes a particular act by an owner that is generally prohibited by the statute: an act to recover possession of the dwelling unit. In the present case, that act was directing the Village to shut off water services, which was prohibited by Section 47-8-36(A)(4). Accordingly, we conclude that Section 47-8-36(A) prohibits an owner from acting to recover possession of a dwelling unit that a resident has not surrendered or abandoned unless a "court order" authorizes the "owner or any person acting on behalf of the owner" to take such action.

{12}    Adopting the district court's construction of "court order"—to include a judgment for restitution for which a writ of restitution has been issued but not executed—would frustrate one of UORRA's goals and lead to illogical results. *See Rutherford v. Chaves Cnty.*, 2003-NMSC-010, ¶ 24, 133 N.M. 756, 69 P.3d 1199 ("Statutes are to be read in a way that facilitates their operation and the achievement of their goals."); *Regents of Univ. of N.M. v. Armijo*, 1985-NMSC-057, ¶ 5, 103 N.M. 174, 704 P.2d 428 ("Statutes should be construed so as to avoid illogical results."). As discussed, UORRA generally prohibits owners from acting to recover possession of a dwelling unit from a resident who refuses to surrender or abandon the unit. *See* § 47-8-36(A). UORRA instead places the responsibility for recovering

possession of the unit with the sheriff. *See* § 47-8-46(A) (providing that the court "issue a writ of restitution directing *the sheriff* to restore possession of the premises to the plaintiff" after judgment is rendered against the defendant for restitution of the premises (emphasis added)). UORRA thus seeks to prevent owners themselves from acting to recover possession of a dwelling unit by ensuring that another recovery procedure—executed by a law enforcement official—is in place. *See* §§ 47-8-36(A),-46(A); *see also* NMSA 1978, § 47-8-41 (1975) ("An action for possession of any premises subject to the provisions of [UORRA] shall be commenced in the manner prescribed by [UORRA]."); *accord* 52B C.J.S. *Landlord & Tenant* § 1484 (2023) (stating that "[t]he modern trend, pursuant to which landlords are generally given a speedy judicial remedy for the recovery of possession of leased property from a tenant improperly holding over after the termination of the lease, is that . . . the landlord . . . may [not] resort to self-help to recover possession of the leased property from the tenant").

{13} Despite the goal of UORRA to avoid owner self-help, under the construction of Section 47-8-36(A) imposed by the district court, an owner could conceivably take action to recover possession of a dwelling unit—by changing the locks or shutting off utilities, for example—as soon as a judgment and writ of restitution directing the sheriff to restore possession was issued, even though the sheriff had not yet executed the writ. Such a result, where the owner's act could effectively force a

resident to surrender possession of the dwelling unit, would render the sheriff's obligation to "restore possession of the premises" unnecessary. *See* § 47-8-46(A). Moreover, allowing an owner to act to recover possession of a unit as soon the judgment for restitution was entered and writ was issued would render superfluous both Section 47-8-46(A)'s provision that the sheriff must generally wait three days *after* entry of judgment before executing the writ and Section 47-8-47(A), which contemplates a stay of execution of "any writ of restitution" in the event of an appeal by the resident under certain circumstances. *See Am. Fed'n of State, Cnty. & Mun. Emps. (AFSCME) v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must . . . be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)). Accordingly, adopting the district court's construction of "court order" would frustrate rather than facilitate achievement of UORRA's goal of preventing owners from acting on their own to recover possession of a dwelling unit. *See* §§ 47-8-36, -46.

{14}     In sum, we conclude that "court order" as used in Section 47-8-36(A) contemplates an order authorizing the "owner or any person acting on behalf of the owner" to recover possession of the dwelling unit. A judgment for restitution for which a writ of restitution has been issued does not constitute such an order. Accordingly, the district court erred in concluding that the judgment for restitution

and its accompanying writ constituted a court order permitting Owners to direct the Village to shut off the dwelling unit's water services.

**II. The District Court Misinterpreted Section 47-8-36(A)(4)'s Duty Exemption Clause**

{15}   As an additional ground for denying Resident's unlawful diminution of services claim, the district court concluded that Owners' act of directing the Village to shut off water services was permitted based on the following language in Section 47-8-36(A)(4):

> [A]n owner . . . shall not knowingly exclude the resident, remove, threaten or attempt to remove or dispossess a resident from the dwelling unit without a court order by . . . interfering with services or normal and necessary utilities to the unit . . ., including . . . hot or cold water . . ., *provided that this section shall not impose a duty upon the owner to make utility payments or otherwise prevent utility interruptions resulting from nonpayment of utility charges by the resident.*

(Emphases added.) We refer to this italicized language as the "duty exemption clause."

{16}   The district court concluded that, because the Village was holding Owners responsible for Resident's unpaid water bill,[2] the duty exemption clause permitted Owners to direct the Village to shut off the dwelling unit's water services. Resident does not dispute that the Village had the right to hold Owners responsible for

---

[2]*See* Village of Ruidoso, N.M., Code of Ordinances ch. 86, art. I., § 86-5(a) (2014) (providing that utility charges are payable jointly and severally by the owner and principal occupant).

11

Resident's unpaid water bill but argues that the district court misinterpreted the duty exemption clause, contending that the clause did not permit Owners to direct the Village to end her water services. We agree with Resident.

{17} "[C]ourts read an entire statute as a whole, considering statutory provisions in relation to one another, and give effect to all provisions of a statute so as to render no part inoperative or surplusage." *Pirtle*, 2021-NMSC-026, ¶ 19 (citation omitted)); *see id.* (recognizing that "[c]ourts assume that every word, phrase, and clause in a legislative enactment is intended and has some meaning and that none was inserted accidentally"). Here, however, the district court appears to have relied on the first part of the duty exemption clause—"this section shall not impose a duty upon the owner to make utility payments"—without reference to the clause's second portion: "*or otherwise prevent* utility interruptions resulting from nonpayment of utility charges by the resident." Section 47-8-36(A)(4) (emphasis added). In doing so, the district court rendered superfluous the phrase "otherwise prevent." *See AFSCME*, 2013-NMCA-063, ¶ 5 ("Statutes must . . . be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)). We explain.

{18} Read as a whole, the duty exemption clause contemplates a situation in which, because of "nonpayment of utility charges by the resident," a utility provider acts to interrupt those utilities. *See* § 47-8-36(A)(4); *see also, e.g.*, NMSA 1978, § 3-23-

1(B) (2011) (providing that a municipality may discontinue water service if payment of a water charge is not made within thirty days from the date the payment is due). When a utility provider takes such action to interrupt utility services, Section 47-8-36(A)(4) "shall not impose a duty upon the owner to . . . prevent [the] . . . interruption[] resulting from nonpayment of utility charges by the resident."

{19} Section 47-8-36(A)(4) contemplates various methods by which an owner *could* prevent such utility interruptions. We read the duty exemption clause's first part as recognizing the principal method by which an owner could prevent such an interruption: "mak[ing] utility payments" on behalf of the nonpaying resident. *See id.* The clause's use of "or *otherwise prevent* utility interruptions," however, contemplates that there may be *other* methods—apart from payment—by which an owner could prevent such utility interruptions. *See id.* (emphasis added). In this way, the clause's use of "*otherwise* prevent" indicates that the owner's act of "mak[ing] utility payments" is done to "prevent utility interruptions resulting from nonpayment of utility charges by the resident." *See id.* (emphasis added). Accordingly, an owner has no duty to make utility payments to "prevent utility interruptions resulting from nonpayment of utility charges by the resident." *Id.*

{20} The duty exemption clause therefore presupposes some affirmative act by a utility provider to interrupt the resident's utility services, in which case the owner is relieved of any duty to make payment on the resident's behalf to prevent this

13

interruption. Here, it is undisputed that there is no evidence the Village provided notice of a utility shut off, told Resident or Owners that service would be shut off unless Resident's bill was paid, nor otherwise acted to interrupt service. Owners' act of directing the Village to shut off water services was thus not made in response to any act by the Village to shut off service. Because the Village had not acted to interrupt utility services before Owner directed the Village to do so, the duty exemption clause does not apply. The district court erred in concluding otherwise.

{21}     Our conclusion is further supported by the goal of UORRA to limit owner self-help remedies. *See Armijo*, 1985-NMSC-057, ¶ 5; *Baker*, 2013-NMSC-043, ¶ 11. Under the district court's interpretation, an owner could conceivably act to interfere with a resident's necessary utilities—effectively evicting the resident— whenever a resident had past due utility charges for which the owner could eventually become liable, absent a court order or any act from the utility company to interrupt service. Allowing an owner to effectively evict a resident in this way would frustrate Section 47-8-36(A)'s goal of preventing owners from acting on their own to recover possession of a dwelling unit. *See* §§ 47-8-36(A), -46(A); *accord* 52B C.J.S. *Landlord & Tenant* § 1484.

{22}     Adopting the district court's interpretation would also frustrate UORRA's purpose of simplifying and clarifying the rights and obligations of owners and residents. *See* NMSA 1978, § 47-8-2 (1975); *Runge v. Fox*, 1990-NMCA-086, ¶ 11,

14

110 N.M. 447, 796 P.2d 1143. More specifically, allowing an owner to interfere with a resident's necessary utilities when a resident had an outstanding utility balance for which the owner could become liable would blur the rights of owners in relation to the obligations of utility providers, which are required by state and local law to follow certain procedures before terminating utility services. *See, e.g.*, § 3-23-1(B) (providing that a municipality may not discontinue water service sooner than thirty days from the date the payment is due); NMSA 1978, § 27-6-17(A) (1993) (providing that "no gas or electric utility shall discontinue service to any residential customer for nonpayment during the period from November 15 through March 15 unless" requested by the customer or specific procedures are followed); Village of Ruidoso, N.M., Code of Ordinances ch. 86, art. I., § 86-6 (a)-(c) (1999) (providing that the Village must give customers a thirty day period to pay past due charges and an additional ten-days' notice before terminating service to the customer). For these reasons, we conclude the district court erred in concluding that Section 47-8-36(A)(4)'s duty exemption clause permitted Owners to direct the Village to shut off water services.

{23} We acknowledge that, in certain circumstances, an owner could become liable for a resident's unpaid utility charges accrued before a writ of restitution is executed and before a utility provider acts to terminate service due to nonpayment by the resident. Nevertheless, both UORRA and contract law provide protections for

15

owners in such a scenario. *See* NMSA 1978, § 47-8-4 (1995) (providing that principles of law, including the law relating to capacity to contract, supplement UORRA, unless UORRA displaces those principles); *see also Hedicke*, 2003-NMCA-032, ¶¶ 25, 27 (looking to the language of UORRA and the rental agreement to resolve the owners' attorney fees claim against residents). The Rental Agreement in this case, read together with UORRA, illustrates these protections.

**{24}** Under UORRA, "If the rental agreement is terminated, the owner is entitled to possession and may have *a claim for rent and a separate claim for damages for breach of the rental agreement*." NMSA 1978, § 47-8-35 (1975) (emphases added). The Rental Agreement in this case provided that Resident must place all utilities in Resident's name, that any bill received by Owner for Resident's utilities "will be treated as unpaid rent," and that "[a]ny failure by [Resident]" to "pay utility bills when due will constitute a material breach of th[e Rental] Agreement" for which Owner has "the right to serve a notice of noncompliance." *See* § 47-8-33(A), (B) (providing for seven days' notice before an owner may terminate a rental agreement for material noncompliance); § 47-8-33(D) (providing for written notice of nonpayment of rent and intent to terminate the rental agreement and for an additional three days after receipt of that written notice before an owner may terminate a rental agreement for unpaid rent). Thus, under UORRA and the terms of the Rental Agreement, Owners possessed a remedy to recover from Resident any unpaid utility

16

bill for which Owners became liable through either a claim for rent or damages for breach of the Rental Agreement. *See* § 47-8-35. As further protection for owners compelled to pursue these claims, "UORRA mandates the award of attorney fees to the prevailing party." *Hedicke*, 2003-NMCA-032, ¶ 25 (citing NMSA 1978, § 47-8-48(A) (1995)).

**CONCLUSION**

{25} For the foregoing reasons, we reverse the district court's judgment denying Resident's claim for unlawful diminution of services and remand for further proceedings on this issue in accordance with this opinion.

{26} **IT IS SO ORDERED.**

_____
**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

_____
**GERALD E. BACA, Judge**

_____
**KATHERINE A. WRAY, Judge**